## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CARBONLITE HOLDINGS LLC, *et al.*,[1] | Case No. 21-10527 (JTD) |
| Debtors. | (Jointly Administered) |
| BAHRAM NOUR-OMID, an individual, and LEARNICON LLC, a Delaware limited liability company, | |
| Plaintiffs, | Adversary Pro. No. _____ |
| v. | **DEMAND FOR JURY TRIAL** |
| CARBONLITE HOLDINGS LLC, a Delaware limited liability company, LF INVESTMENT HOLDINGS, LLC, a Delaware limited liability company, LEON FARAHNIK, an individual, KIM JEFFERY, an individual, FARAMARZ YOUSEFZADEH, an individual, ORION ENERGY CREDIT OPPORTUNITIES FUND II, L.P., a Delaware limited partnership, ORION ENERGY CREDIT OPPORTUNITIES FUND II PV, L.P., a Delaware limited partnership, ORION ENERGY CREDIT OPPORTUNITIES FUND II GPFA, L.P., a Delaware limited partnership, FORCE TEN PARTNERS, LLC, a Delaware limited liability company, BRIAN WEISS, an individual, and DOES 1 through 50, inclusive, | |
| Defendants. | |

## COMPLAINT

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: CarbonLite Holdings LLC (8957); CarbonLite Industries LLC (3596); CarbonLite P Holdings, LLC (8957); CarbonLite P, LLC (5453); CarbonLite PI Holdings, LLC (8957); CarbonLite Pinnpack, LLC (8957); CarbonLite Recycling Holdings LLC (8957); CarbonLite Recycling LLC (3727); CarbonLite Sub-Holdings, LLC (8957); Pinnpack P, LLC (8322); and Pinnpack Packaging, LLC (9948).  The address of the Debtors' corporate headquarters is 10250 Constellation Blvd., Los Angeles, CA 90067.

Plaintiffs Bahram Nour-Omid and Learnicon LLC (collectively, "Plaintiffs") hereby allege, by and through their undersigned counsel, upon personal knowledge as to themselves and their own acts and upon information and belief as to all other matters, as follows:

**PARTIES**

1.     Plaintiff Bahram Nour-Omid is an individual residing in Los Angeles County, California.  Dr. Nour-Omid is the managing member of Plaintiff Learnicon LLC ("Learnicon").

2.     Plaintiff Learnicon is a Delaware limited liability company with its principal place of business in Los Angeles, California.

3.     Defendant CarbonLite Holdings LLC ("CarbonLite") is a Delaware limited liability company with its principal place of business in Los Angeles, California.  According to its website, CarbonLite is "the world's largest producer of food-grade Post-Consumer Recycled PET [polyethylene terephthalate, a recyclable plastic]."  Defendant Leon Farahnik is the Founder, Chief Executive Officer, and Chairman of the Board of Directors of CarbonLite. Plaintiff Bahram Nour-Omid was a director of CarbonLite at all relevant times herein.

4.     Defendant LF Investment Holdings, LLC ("LF Investment") is a Delaware limited liability company with its principal place of business in Los Angeles, California.  LF Investment is a holding company that was created for the sole purpose of carrying out the deceptive and unlawful transactions at issue.

5.     Defendant Leon Farahnik is an individual residing in Los Angeles County, California.  As mentioned, Mr. Farahnik is the Founder, Chief Executive Officer, and Chairman of the Board of Directors of CarbonLite.  Mr. Farahnik is also the sole member of HPC Industries, LLC ("HPC Industries"), which in turn is the sole member of LF Investment and the

managing member and largest shareholder of CarbonLite.  Mr. Farahnik is effectively the owner, principal, and sole decision-maker of both HPC Industries and LF Investment.

6.      Defendant Kim Jeffery is an individual residing in Los Angeles County, California.  Mr. Jeffery is a director of CarbonLite and serves on CarbonLite's Finance Committee.

7.      Defendant Faramarz Yousefzadeh is an individual residing in Los Angeles County, California.  Mr. Yousefzadeh is a director of CarbonLite and serves on CarbonLite's Finance Committee.

8.      Defendant Orion Energy Credit Opportunities Fund II, L.P. is a limited partnership organized under Delaware law.  It is a lender to CarbonLite pursuant to a Credit Agreement dated as of August 2, 2019, as amended (the "Credit Agreement").

9.      Defendant Orion Energy Credit Opportunities Fund II PV, L.P. is a limited partnership organized under Delaware law.  It is a lender to CarbonLite pursuant to the Credit Agreement.

10.      Defendant Orion Energy Credit Opportunities Fund II GPFA, L.P. is a limited partnership organized under Delaware law.  It is a lender to CarbonLite pursuant to the Credit Agreement.

11.      Defendants Orion Energy Credit Opportunities Fund II, L.P., Orion Energy Credit Opportunities Fund II PV, L.P., and Orion Energy Credit Opportunities Fund II GPFA, L.P. are collectively referred to herein as "Orion."

12.      Defendant Force Ten Partners, LLC ("Force 10") is a Delaware limited liability company with its principal place of business in Newport Beach, California.  Force 10 is an advisory firm that specializes in corporate restructuring.  Force 10 entered into an engagement

agreement with CarbonLite to provide the services of Defendant Brian Weiss as Chief Restructuring Officer for CarbonLite to manage the company's ongoing restructuring efforts.

13.    Defendant Brian Weiss is an individual residing in Orange County, California. Mr. Weiss is a partner of Force 10 who, at all times relevant herein, served as CarbonLite's Chief Restructuring Officer.

14.    Plaintiffs do not know the true names and capacities of the defendants sued herein as Does 1 through 50, inclusive, and therefore sue said defendants by such fictitious names. Plaintiffs will amend this Complaint to allege the true names and capacities of defendants Does 1 through 50 when the same are ascertained.  Plaintiffs are informed and believe and based thereon allege that such fictitiously named defendants are liable to Plaintiffs for the facts and circumstances alleged herein.

15.    Plaintiffs are informed and believe and based thereon allege that each and every one of the defendants was the agent, employee, joint venturer, partner, subsidiary, and/or co-conspirator of each other defendant, and that each defendant aided and abetted each other defendant in committing the acts complained of herein.

16.    Defendants CarbonLite, LF Investment, Leon Farahnik, Kim Jeffery, Faramarz Yousefzadeh, Orion, Force 10, Brian Weiss, and Does 1 through 50 are collectively referred to herein as "Defendants."

## JURISDICTION AND VENUE

17.    This Court has personal jurisdiction over Defendants because they, and each of them, reside in, have extensive contacts with, conduct substantial business within, and/or intentionally avail themselves of the benefits and protections of the laws in, the State of Delaware and this Judicial District.

18.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334.  On or about March 8, 2021, CarbonLite filed a Chapter 11 Voluntary Petition in this Court initiating bankruptcy proceedings (*In re: CarbonLite Holdings LLC, et al.*, Case No. 21-bk-10527-JTD). This action against CarbonLite and the other Defendants arises in and is related to such action.

19.     Venue is proper in this Court because Defendants are Delaware entities, reside and/or do business within this Judicial District, and/or have agents for service of process in this Judicial District.

## FACTUAL ALLEGATIONS

20.     CarbonLite was founded in or around 2010 by defendant Leon Farahnik. CarbonLite is in the business of recycling plastic into food-grade Post-Consumer Recycled polyethylene terephthalate resins.

21.     On or about August 2, 2019, CarbonLite entered into the Credit Agreement with Orion establishing a credit facility for CarbonLite.  The Credit Agreement was subsequently amended six times, by the following: Amendment No. 1 dated March 30, 2020; Amendment No. 2 dated September 9, 2020; Amendment No. 3 dated October 23, 2020; Amendment No. 4 dated December 10, 2020; Forbearance Agreement and Amendment No. 5 dated February 8, 2021; and Amendment No. 6 dated March 1, 2021.

22.     Pursuant to the Credit Agreement and its amendments, Orion extended a series of loans to CarbonLite and its subsidiaries, in several tranches.  The original Tranche A Loans consisted of $80,000,000.00.[2]  The Tranche B Loans, issued under Amendment No. 3, consisted of $5,250,000.   The Tranche C Loans, issued under the Forbearance Agreement and

---

[2] A fourth Orion entity, Orion Energy Credit Opportunities CarbonLITE Co-Invest, L.P., also participated in the Tranche A Loans, issuing $30,000,000 of the $80,000,000 total.

Amendment No. 5, consisted of $2,800,000. The Tranche C Loans were later increased under Amendment No. 6 by $2,684,035.34, making the total Tranche C Commitments equal to $5,484,035.34.

23.     After lending $80,000,000 to CarbonLite and its subsidiaries in the Tranche A Loans, Orion wanted additional security and assurance that their Tranche B Loans in the amount of $5,250,000 would be repaid—if not by the Borrowers, then by some other third party. Orion and CarbonLite discussed having another investor "step in" to the Tranche B obligation and setting up the transaction as a "participation," or sale of the Tranche B Loans. That investor became defendant Leon Farahnik through his entity LF Investment. However, as part of the transaction, plaintiff Learnicon and its managing member plaintiff Bahram Nour-Omid, who was a CarbonLite director at the time,[3] loaned the funds to LF Investment to enable it to purchase the participation in the Tranche B Loans. In other words, Plaintiffs financed the transaction—which was plainly known to Orion.

24.     On or about October 23, 2020, in conjunction with Orion issuing the Tranche B Loans to CarbonLite, Orion, CarbonLite, and LF Investment entered into a series of agreements to effectuate a sale of the Tranche B Loans to LF Investment.

25.     LF Investment is a holding company that was created for the sole purpose of carrying out this transaction and the subsequent transactions that ultimately harmed Plaintiffs as alleged herein. CarbonLite was the initial member of LF Investment. At some point, HPC Industries became the sole member of LF Investment. The common thread among all of these entities is defendant Leon Farahnik. At all relevant times, Mr. Farahnik was (and is) the Chief

---

[3] Dr. Nour-Omid resigned from his director position on February 12, 2021.

Executive Officer of CarbonLite and the principal and sole decision-maker of both LF Investment and HPC Industries.

26.     To consummate the Tranche B transaction, LF Investment "purchased" the Tranche B Loans from Orion pursuant to a Participation Agreement for Par/Near Par Trades dated October 23, 2020 (the "Participation Agreement").  In reality, the funds for the purchase came from Learnicon.  Simultaneously with the execution of the Participation Agreement, LF Investment issued a promissory note to Learnicon (the "Note") and entered into a Note Purchase Agreement dated October 23, 2020 (the "Note Purchase Agreement") to sell the Note to Learnicon for $5,250,000.  The Note was secured by LF Investment's participation interest in the Participation Agreement, pursuant to a Security Agreement between Learnicon, as the Secured Party, and LF Investment, as the Debtor, with the security interest being recorded in Delaware in a Uniform Commercial Code ("UCC") Form-1 filing.  Learnicon consequently wired $5,250,000 directly to Orion to purchase the Tranche B Loans.

27.     The effect of these agreements was that Orion had sold the Tranche B Loans to LF Investment (via the Participation Agreement), and LF Investment had sold a note to Learnicon secured by its interest in the Participation Agreement (via the Note Purchase Agreement).  However, Learnicon was the true "purchaser" of the Tranche B Loans, as it provided the funds directly to Orion for the purchase.

28.     In connection with these transactions, at defendant Leon Farahnik's direction, CarbonLite's counsel prepared a term sheet for Plaintiffs to summarize the terms of the deal. The term sheet provided in pertinent part:

- Orion was the lender of $5.25M.

- The loans would be advanced under the existing Credit Agreement as new "Tranche B Loans."

- The Tranche B Loans would be "first out" as it relates to repayment with proceeds from an equity raise, subordinated debt, or second lien debt; on liquidation, company sale, and other scenarios, proceeds would be distributed first to the Tranche A Loans in priority as "first out," then to the Tranche B Loans.

- The Tranche B Loans would be personally guaranteed by Leon Farahnik up to $5.25M + accrued interest + certain milestone fees.

- CarbonLite would use commercially reasonable efforts toward a minimum $20.0M equity raise.

29.     In reliance on these terms, Plaintiffs agreed to pay $5,250,000 for the Tranche B Loans and participate in the transactions and agreements described above.

30.     As mentioned, also in connection with the above-described transactions, Plaintiffs filed a UCC-1 Financing Statement naming LF Investment as the Debtor and Learnicon as the Secured Party.  The UCC-1 statement specifically identified as collateral "(a) All instruments, promissory notes, securities and all other investment property, general intangibles (including all payment intangibles), money, deposit accounts, and any other contract rights or rights to the payment of money, including without limitation all of Secured Party's right, title and interest under the Participation Agreement and in and to the Participation; and (b) All Proceeds of each of the foregoing, all books and records relating to the foregoing, [and] all supporting obligations related thereto."  The UCC-1 statement was prepared by CarbonLite's counsel and filed publicly in Delaware on or around October 22, 2020.

31.     There is no doubt that Orion knew Learnicon financed the Tranche B Loans. There is also no doubt that each of the other Defendants knew, or at the very least had constructive knowledge, that Learnicon financed the Tranche B Loans and was the true owner of the interest therein.

32.     On February 2, 2021, there was a special meeting of the board of directors of CarbonLite.  The purpose of the meeting was to discuss CarbonLite's financial status and situation with its principal lenders, including Orion.  At the meeting, Mr. Farahnik informed the board that Orion had declared a default under the Credit Agreement.  He informed the board that CarbonLite's Finance Committee (composed of defendants Kim Jeffery and Faramarz Yousefzadeh) and defendant Brian Weiss, CarbonLite's Chief Restructuring Officer pursuant to the engagement with Force 10, had been negotiating with Orion to obtain a forbearance agreement as well as additional funding of working capital.  Mr. Weiss then updated the board on the status of the negotiations with Orion, including the fact that Orion had agreed to a few requested changes from CarbonLite, such as eliminating the proposed requirement for collateral being provided by, and proposed restrictions on intercompany activities involving, CarbonLite's Texas and Pennsylvania subsidiaries, and negotiating a smaller prepayment penalty with respect to the proposed Tranche C advance.  At no time did defendants Farahnik, Jeffery, Yousefzadeh, or Weiss inform the board (including Dr. Nour-Omid) that the proposed forbearance agreement would subordinate the Tranche B Loans (the interest in which was then held by LF Investment for the benefit of Learnicon) to the new Tranche C Loans from Orion.

33.     At the February 2, 2021 board meeting, the CarbonLite board voted to delegate to the Finance Committee the authority to negotiate and finalize the forbearance agreement with

Orion and to authorize Mr. Farahnik to execute and deliver the forbearance agreement on CarbonLite's behalf.

34.     On or about February 8, 2021, CarbonLite and Orion entered into the Forbearance Agreement and Amendment No. 5 to Credit Agreement dated February 8, 2021 (the "Forbearance Agreement").

35.     Pursuant to the Forbearance Agreement, Orion agreed to issue a new tranche of loans (Tranche C) to CarbonLite in the amount of $2,800,000.  Unbeknownst to Plaintiffs, the Forbearance Agreement subordinated the Tranche B Loans to the Tranche A *and* Tranche C Loans and eliminated certain rights associated with the Tranche B Loans, such as a priority payout in connection with the sale of the PinnPack Facility[4] located in California.  In other words, the terms on which Plaintiffs had agreed to finance the Tranche B Loans had been unilaterally eviscerated, placing their interest in a much worse position.

36.     Mr. Farahnik signed the Forbearance Agreement on behalf of CarbonLite and its subsidiaries.  The Forbearance Agreement also required that LF Investment (who, at least on paper, still owned the participation interest from the Participation Agreement with Orion relating to the Tranche B Loans) approve the agreement.  To that end, Mr. Farahnik signed a Consent on behalf of LF Investment, which stated: "In connection with the entry by CarbonLite Holdings, LLC, its subsidiaries and Orion … into the Forbearance Agreement and Amendment No. 5 to the Credit Agreement (the 'Agreements'), I hereby certify on behalf of LF Investment Holdings LLC, that I have reviewed and approve of the Agreements."  Mr. Farahnik signed the

---

[4] The PinnPack Facility is a facility in Oxnard, California operated by PinnPack Packaging LLC, a subsidiary of CarbonLite.

Consent as LF Investment's "Manager."  LF Investment apparently did not receive any consideration for this Consent.

37.     In addition, Mr. Jeffery and Mr. Yousefzadeh (CarbonLite's Finance Committee) signed a "Unanimous Written Consent" to the Forbearance Agreement.

38.     Dr. Nour-Omid never saw the Forbearance Agreement before it was executed. He was not informed of its contents.  He was not informed that the Forbearance Agreement subordinated the Tranche B Loans to the Tranche A *and* Tranche C Loans.  Had Dr. Nour-Omid been informed that Plaintiffs' interest in the Tranche B Loans was going to be harmed in this way, he would have objected to the Forbearance Agreement and done everything in his power to protect Plaintiffs' interest.

39.     On February 10, 2021, there was another special meeting of the board of directors of CarbonLite.  At this meeting, Mr. Yousefzadeh reported to the board that the Forbearance Agreement with Orion had been executed and that Orion had already advanced $2,500,000 to CarbonLite.  According to the board meeting minutes, Mr. Yousefzadeh "summarized the key elements of the Forbearance Agreement, which included a number of stringent limitations on the Company's [CarbonLite's] financial operations, and further required the Company to begin marketing the Company for sale, as well as to prepare for a potential Chapter 11 filing in March …."  At no time did defendants Farahnik, Yousefzadeh, Jeffery, or Weiss inform the board (including Dr. Nour-Omid) that the executed Forbearance Agreement subordinated the Tranche B Loans to the newly issued Tranche C Loans.

40.     On or about February 16, 2021, LF Investment and Learnicon entered into a Membership Interest Purchase Agreement under which LF Investment sold its interest in the Participation Agreement with Orion (and all rights to the Tranche B Loans) directly to

Learnicon.  Thus, whereas previously Learnicon had its Note secured by the Participation Agreement interest, Learnicon now owned the participation interest directly.  At no time in connection with entering into the Membership Interest Purchase Agreement did LF Investment or its principal Mr. Farahnik inform Learnicon or Dr. Nour-Omid that the Forbearance Agreement between CarbonLite and Orion had subordinated the Tranche B Loans to the newly issued Tranche C Loans.

41.     Plaintiffs finally received a copy of the Forbearance Agreement on or around February 25, 2021.  Only then did they realize what had truly happened.  CarbonLite and the director defendants (Farahnik, Jeffery, and Yousefzadeh) had used Plaintiffs' $5,250,000 payment to secure funding from Orion (the Tranche B Loans).  Orion knew about and participated in the transaction that facilitated the $5,250,000 payment by Learnicon to Orion for the "purchase" of the Tranche B Loans by LF Investment.  Indeed, Plaintiffs engaged in multiple communications (including several phone calls) with representatives of Orion, wherein they discussed that Plaintiffs would be financing the Tranche B Loans.  There are emails memorializing this fact.  Plaintiffs wired the funds directly to Orion, who accepted them.  Orion and the other defendants then negotiated and entered into the Forbearance Agreement to provide CarbonLite with additional desperately needed capital and subordinated the Tranche B Loans to the newly issued Tranche C Loans.  This was done without Plaintiffs' knowledge or consent, and in complete disregard of Plaintiffs' rights and interests in the Tranche B Loans.  Then, after the Forbearance Agreement was executed, LF Investment (through Mr. Farahnik) sold the participation interest in the Tranche B Loans to Learnicon without disclosing that the interest had been substantially devalued because it had been subordinated to both the Tranche A *and* Tranche C Loans.

42.     To make matters worse, on March 1, 2021, Orion and CarbonLite entered into Amendment No. 6 to Credit Agreement, which increased the Tranche C Loans by $2,684,035.34, making the total Tranche C Commitments equal to $5,484,035.34.  This was done after Learnicon had become the record holder of the interest in the Tranche B Loans and at such a time when Defendants knew that they had already substantially harmed Learnicon's interest.  Amendment No. 6 further harmed Learnicon's interest by subordinating the Tranche B Loans to over $2.6 million of additional Tranche C Commitments on top of the original $2.8 million Tranche C Loans.

43.     Plaintiffs were not aware of the negotiation and execution of Amendment No. 6. They were not informed of the contents of Amendment No. 6.  They were not informed of the effect of Amendment No. 6 on the Tranche B Loans.  They did not know about, consent to, or approve in any way Amendment No. 6.

44.     Through this action, Plaintiffs seek damages and declaratory relief for the wrongdoing that was committed against them by the Defendants as alleged herein.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Fraud**
**(By Plaintiffs Against Defendants LF Investment, Farahnik, Jeffery, Yousefzadeh, Weiss, and Does 1-5)**

45.     Plaintiffs incorporate by reference and reallege each and every allegation contained in the paragraphs above and below as if fully set forth herein.

46.     Each of the defendants named herein owed a duty to Plaintiffs to disclose certain material facts.  Defendants Farahnik, Jeffery, Yousefzadeh, and Weiss owed a fiduciary duty to plaintiff Nour-Omid by virtue of their position and relationship with CarbonLite and each other. Farahnik and LF Investment, on the one hand, and Nour-Omid and Learnicon, on the other hand,

were also business partners by virtue of the Note, Note Purchase Agreement, and Participation Purchase Agreement.

47.     Each of the defendants named herein made representations to Plaintiffs but did not disclose facts that materially qualified those representations and that rendered those representations misleading.  Specifically, at CarbonLite board meetings and through email and oral communications, the defendants named herein disclosed limited facts regarding the Forbearance Agreement between Orion and CarbonLite and did not disclose that the Forbearance Agreement subordinated the Tranche B Loans.  This fact was known to each of the defendants named herein, and each of them knew that this fact was not known to or reasonably discoverable by Plaintiffs.

48.     The defendants named herein concealed or suppressed from Plaintiffs the material fact that the Forbearance Agreement subordinated the Tranche B Loans, substantially harming Plaintiffs' rights and interests therein.

49.     The defendants named herein intentionally concealed or suppressed this material fact with the intent to defraud Plaintiffs.

50.     Plaintiffs were not aware of the concealed material fact.  Had the material fact been disclosed, Plaintiffs would have objected to the Forbearance Agreement and the subordination of the Tranche B Loans and/or insisted on additional security or guarantees to protect their rights and interests therein.

51.     As a direct and proximate result of these defendants' concealment or suppression, Plaintiffs have sustained damages in an amount to be proven at trial.

52.     Moreover, these defendants' conduct as described herein was intentional, willful, malicious, outrageous, and oppressive, and therefore also justifies an award of punitive damages.

## SECOND CAUSE OF ACTION
### Negligent Misrepresentation
**(By Plaintiffs Against Defendants LF Investment, Farahnik, Jeffery, Yousefzadeh, Weiss, and Does 1-5)**

53.     Plaintiffs incorporate by reference and reallege each and every allegation contained in the paragraphs above and below as if fully set forth herein.

54.     Each of the defendants named herein made representations to Plaintiffs regarding the elements and conditions of the Forbearance Agreement.  These representations were made at CarbonLite board meetings and through email and oral communications between approximately October 2020 and February 2021.  At no time did any of these defendants represent to Plaintiffs that the Forbearance Agreement subordinated the Tranche B Loans.

55.     Even if the defendants named herein did not intentionally misrepresent to Plaintiffs the elements and conditions of the Forbearance Agreement, they acted recklessly, negligently, and/or unreasonably in misrepresenting the elements and conditions of the Forbearance Agreement while failing to disclose that the Forbearance Agreement subordinated the Tranche B Loans.

56.     The defendants named herein intended that Plaintiffs rely on their representations regarding the Forbearance Agreement.

57.     Plaintiffs in fact reasonably relied on those representations to their detriment. Plaintiffs were not involved in negotiating or executing the Forbearance Agreement.  They reasonably trusted the defendants named herein to negotiate and execute the Forbearance Agreement in good faith and without harming Plaintiffs' rights and interests in the Tranche B Loans.  After all, it was only Plaintiffs' willingness to enter into the series of agreements described in this Complaint that enabled CarbonLite to secure the Tranche B Loans from Orion.

And Plaintiffs effectively refinanced the Tranche B Loans on more favorable terms for the company.

58.     As a direct and proximate result of these defendants' negligent misrepresentations, Plaintiffs have sustained damages in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
### Breach of Fiduciary Duty
### (By Plaintiff Nour-Omid Against Defendants Farahnik, Jeffery, Yousefzadeh, Weiss, and Does 1-5)

59.     Plaintiffs incorporate by reference and reallege each and every allegation contained in the paragraphs above and below as if fully set forth herein.

60.     Each of the defendants named herein owed a fiduciary duty to plaintiff Nour-Omid by virtue of their position and relationship with CarbonLite and each other.

61.     Each of the defendants named herein breached their fiduciary duty to plaintiff Nour-Omid by taking advantage of his commitment to finance the Tranche B Loans to CarbonLite, by negotiating and executing the Forbearance Agreement without regard for and to the severe detriment of his rights and interests, by subordinating the Tranche B Loans without his knowledge or consent, and by later negotiating and executing Amendment No. 6 to the Credit Agreement which even further subordinated the Tranche B Loans, all while knowing that CarbonLite would be imminently filing for Chapter 11 bankruptcy and that it would be extremely unlikely that the Tranche B Loans would ever be repaid.

62.     These defendants' breach of fiduciary duty was a substantial factor in causing harm to plaintiff Nour-Omid.

63.     As a direct and proximate result of these defendants' conduct, plaintiff Nour-Omid has sustained damages in an amount to be proven at trial.

64.     Moreover, these defendants' conduct as described herein was intentional, willful, malicious, outrageous, and oppressive, and therefore also justifies an award of punitive damages.

### FOURTH CAUSE OF ACTION
### Aiding and Abetting Breach of Fiduciary Duty
### (By Plaintiff Nour-Omid Against Defendants CarbonLite, Orion, Force 10, and Does 6-50)

65.     Plaintiffs incorporate by reference and reallege each and every allegation contained in the paragraphs above and below as if fully set forth herein.

66.     As alleged above, defendants Farahnik, Jeffery, Yousefzadeh, and Weiss were in a fiduciary relationship with plaintiff Nour-Omid and owed a fiduciary duty to plaintiff Nour-Omid.  These defendants breached their fiduciary duty to plaintiff Nour-Omid in all the ways alleged above.

67.     The defendants named in this cause of action had full knowledge and awareness that the above-referenced defendants had a fiduciary relationship with plaintiff Nour-Omid and that they breached their fiduciary duty to plaintiff Nour-Omid.

68.     The defendants named in this cause of action knowingly and actively participated in the actions of the above-referenced defendants that constituted a breach of fiduciary duty. CarbonLite was at the center of all the relevant transactions that ultimately resulted in the Tranche B Loans being subordinated and plaintiff Nour-Omid's rights and interests therein being substantially impaired.  Orion was aware that plaintiff Nour-Omid had financed the purchase of the Tranche B Loans and, in negotiating and executing the Forbearance Agreement (and later Amendment No. 6), knowingly harmed his interests therein.  Force 10 was intimately involved in CarbonLite's restructuring efforts, including its negotiation and execution of the Forbearance Agreement and its preparations for filing for bankruptcy, and similarly knowingly harmed plaintiff Nour-Omid's rights and interests in the Tranche B Loans.

69.     As a direct and proximate result of these defendants aiding and abetting the breaches of fiduciary duty against plaintiff Nour-Omid alleged in this Complaint, plaintiff Nour-Omid has sustained damages in an amount to be proven at trial.

70.     Moreover, these defendants' conduct as described herein was intentional, willful, malicious, outrageous, and oppressive, and therefore also justifies an award of punitive damages

### FIFTH CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (By Plaintiffs Against All Defendants)

71.     Plaintiffs incorporate by reference and reallege each and every allegation contained in the paragraphs above and below as if fully set forth herein.

72.     Plaintiffs and Defendants entered into a series of agreements with one another to effectuate the transactions at issue.  These agreements included:

a.      The Participation Agreement and Amendment No. 3 to the Credit Agreement between Orion, CarbonLite, and LF Investment

b.      The Note Purchase Agreement between LF Investment/Leon Farahnik and Learnicon/Bahram Nour-Omid

c.      The Engagement Agreement between Force 10 and CarbonLite

d.      The Forbearance Agreement and Amendment No. 5 to the Credit Agreement between Orion and CarbonLite

e.      The Membership Interest Purchase Agreement between LF Investment/ Leon Farahnik and Learnicon/Bahram Nour-Omid

f.      Amendment No. 6 to the Credit Agreement between Orion and CarbonLite

73.     These agreements were all interconnected.  Their purpose and effect was to refinance a $5,250,000 loan from Orion to CarbonLite (the Tranche B Loans), which was facilitated by Plaintiffs and which contemplated a valid perfected security interest and guarantees that should have protected Plaintiffs' interests.  Defendants then subordinated the Tranche B Loans and substantially impaired Plaintiffs' interests by issuing a new series of loans (the Tranche C Loans) that would get priority over the Tranche B Loans, all while hiding the same from Plaintiffs.

74.     Plaintiffs have performed all conditions, covenants, and promises required of them under the agreements they signed, except for those conditions, covenants, and promises they were excused from having to discharge.

75.     There is implied in every contract a covenant of good faith and fair dealing under which each party covenants not to do anything that would deprive the other party of the benefit of the bargain.

76.     Plaintiffs agreed to refinance the $5,250,000 Tranche B Loans from Orion to CarbonLite through the series of agreements described above.  At all times, they reasonably expected that Defendants would act in good faith, would protect their legitimate rights and interests in the Tranche B Loans, and would not do anything to harm those interests.  Plaintiffs reasonably expected that the Tranche B Loans would be repaid in accordance with the terms that were presented to them and would not be subordinated to additional loans without their knowledge or consent.

77.     To the extent any of the above-referenced written agreements did not expressly prohibit the Tranche B Loans from being subordinated without Plaintiffs' knowledge or consent, the implied covenant of good faith and fair dealing imposed that requirement.

78.     Defendants, and each of them, breached the implied covenant of good faith and fair dealing in all the ways alleged in this Complaint.

79.     As a direct and proximate result of Defendants' conduct which constitutes breach of the implied covenant of good faith and fair dealing, plaintiff Nour-Omid has sustained damages in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**
**Tortious Interference with Contractual Relations**
**(By Plaintiffs Against Defendants CarbonLite, Orion, Force 10, Jeffery, Yousefzadeh, Weiss, and Does 1-50)**

80.     Plaintiffs incorporate by reference and reallege each and every allegation contained in the paragraphs above and below as if fully set forth herein.

81.     Plaintiffs had multiple contracts with defendants LF Investment and Farahnik, including the Note Purchase Agreement and Membership Interest Purchase Agreement.  The purpose of these contracts was to secure and protect Plaintiffs' rights and interests in the Tranche B Loans.   Defendant LF Investment was a special purpose entity formed solely for the purpose of acquiring a participation interest in the Tranche B Loans, which Plaintiffs financed and subsequently acquired.

82.     The defendants named in this cause of action had full knowledge and awareness of the contracts between Plaintiffs and defendants LF Investment and Farahnik.

83.     The conduct of the defendants named in this cause of action prevented the performance by defendants LF Investment and Farahnik of those contracts or, at the very least, made such performance virtually impossible.

84.     The defendants named in this cause of action intended to disrupt the performance of these contracts and knew that such disruption was substantially certain to occur.  To wit, they knowingly negotiated the Forbearance Agreement, which subordinated the Tranche B Loans

without Plaintiffs' knowledge or consent, making it extremely unlikely that the Tranche B Loans would ever be repaid.  Then they made matters even worse by negotiating and executing Amendment No. 6 to the Credit Agreement, which even further subordinated the Tranche B Loans, without Plaintiffs' knowledge or consent.

85.     At the very least, the defendants named in this cause of action acted negligently in disrupting the performance of the contracts between Plaintiffs and defendants LF Investment and Farahnik because they should have known that their conduct would cause such disruption and/or make such disruption substantially certain to occur.

86.     The performance of the contracts between Plaintiffs and defendants LF Investment and Farahnik were actually disrupted by these defendants' conduct.  Such conduct was a substantial factor in causing Plaintiffs' harm.

87.     As a direct and proximate result of these defendants' conduct, Plaintiffs have sustained damages in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
### Tortious Interference with Economic Relations
### (By Plaintiffs Against Defendants CarbonLite, Orion, Force 10, Jeffery, Yousefzadeh, Weiss, and Does 1-50)

88.     Plaintiffs incorporate by reference and reallege each and every allegation contained in the paragraphs above and below as if fully set forth herein.

89.     Plaintiffs were in an economic relationship with defendants LF Investment and Farahnik that should have and would have resulted in an economic benefit to Plaintiffs.  Indeed, there was more than a reasonable probability of a business opportunity or economic benefit to Plaintiffs from this relationship.  In exchange for their commitment to finance the Tranche B Loans, Plaintiffs were supposed to receive repayment of the loans + accrued interest + certain milestone fees.  The expected economic benefit was greater than $5,250,000.

90.     The defendants named in this cause of action had full knowledge and awareness of the economic relationship between Plaintiffs and defendants LF Investment and Farahnik.

91.     The defendants named in this cause of action engaged in wrongful conduct that disrupted this economic relationship.  These defendants acted in bad faith, breached (or aided and abetted the breach of) fiduciary duties, and defrauded Plaintiffs by knowingly subordinating the Tranche B Loans in disregard of Plaintiffs' rights and interests therein.

92.     The defendants named in this cause of action intended to disrupt the economic relationship between Plaintiffs and defendants LF Investment and Farahnik.  Again, they knowingly negotiated the Forbearance Agreement, which subordinated the Tranche B Loans without Plaintiffs' knowledge or consent, making it extremely unlikely that the Tranche B Loans would ever be repaid.  Then they made matters even worse by negotiating and executing Amendment No. 6 to the Credit Agreement, which even further subordinated the Tranche B Loans, without Plaintiffs' knowledge or consent.

93.     At the very least, the defendants named in this cause of action acted negligently in disrupting the economic relationship between Plaintiffs and defendants LF Investment and Farahnik because they should have known that their conduct would cause such disruption and/or make such disruption substantially certain to occur.

94.     The economic relationship between Plaintiffs and defendants LF Investment and Farahnik were actually disrupted by these defendants' conduct.  Such conduct was a substantial factor in causing Plaintiffs' harm.

95.     As a direct and proximate result of these defendants' conduct, Plaintiffs have sustained damages in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
### Declaratory Relief
**(By Plaintiffs Against Defendants CarbonLite, Orion, Force 10, LF Investment, Farahnik, and Does 6-50)**

96.     Plaintiffs incorporate by reference and reallege each and every allegation contained in the paragraphs above and below as if fully set forth herein.

97.     An actual and immediate controversy has arisen and now exists between Plaintiffs and the defendants named herein regarding Plaintiffs' rights and interests in the Tranche B Loans relative to the Tranche A and Tranche C Loans.

98.     The Forbearance Agreement purported to subordinate the Tranche B Loans without Plaintiffs' knowledge or consent.  Later, Amendment No. 6 to the Credit Agreement purported to even further subordinate the Tranche B Loans without Plaintiffs' knowledge or consent.

99.     The Forbearance Agreement also purported to further hamper Plaintiffs' rights and interests by removing the Tranche B priority in payout for a Qualified PinnPack Bid in the event of a CarbonLite bankruptcy proceeding.

100.    For all the reasons alleged in this Complaint, Plaintiffs' rights and interests in the Tranche B Loans should have priority over the Tranche C Loans, and the Tranche B priority in payout for a Qualified PinnPack Bid should be fully recognized and followed.

101.    A judicial declaration that the Tranche B Loans (and Plaintiffs' rights and interests therein) maintain their priority over the Tranche C Loans and confirming the existence of the Tranche B priority in payout for a Qualified PinnPack Bid is necessary and appropriate to protect Plaintiffs' rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief against Defendants:

1.      For compensatory damages in excess of the jurisdictional minimum of this Court

and in an amount to be determined at trial, which in no event should be lower

than $5,250,000;

2.      For punitive damages on Plaintiffs' first, third, and fourth causes of action;

3.      For declaratory relief;

4.      For the recovery of reasonable attorneys' fees as permitted by law;

5.      For interest at the legal rate per annum;

6.      For the costs of this suit; and

7.      For such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury on all causes of actions so triable.


Dated:  April 12, 2021                          BARNES & THORNBURG LLP


                                                /s/ *Kevin G. Collins*
                                                Thomas E. Hanson, Jr. (No. 4102)
                                                Kevin G. Collins (No. 5149)
                                                1000 N. West Street, Suite 1500
                                                Wilmington, Delaware 19801
                                                Telephone: (302) 300-3434
                                                Facsimile: (302) 300-3456
                                                Email:  thanson@btlaw.com
                                                        kcollins@btlaw.com

                                                and

                                                Sanford L. Michelman (Cal. Bar No. 179702)
                                                smichelman@mrllp.com
                                                Mona Z. Hanna (Cal. Bar No. 131439)
                                                mhanna@mrllp.com
                                                Howard I. Camhi (Cal. Bar No. 149194)
                                                hcamhi@mrllp.com
                                                Alexander R. Safyan (Cal. Bar No. 277856)

asafyan@mrllp.com
MICHELMAN & ROBINSON, LLP
10880 Wilshire Blvd., 19th Floor
Los Angeles, CA 90024
Telephone: (310) 299-5500
Facsimile: (310) 299-5600

Attorneys for Plaintiffs Bahram Nour-Omid and
Learnicon LLC