EXHIBIT 7

*Execution Version*

# AMENDMENT NO. 4 AND WAIVER TO
# CREDIT AGREEMENT

THIS AMENDMENT NO. 4 AND WAIVER TO CREDIT AGREEMENT (this "Amendment"), effective as of December 10, 2020, is among CarbonLite Holdings, LLC (the "Borrower"), certain Subsidiaries of the Borrower as guarantors (the "Guarantors"), the lenders party hereto (the "Lenders"), Orion Energy Partners Investment Agent, LLC, as Administrative Agent ("Administrative Agent") and Orion Energy Partners Investment Agent, LLC, as Collateral Agent ("Collateral Agent") and relates to that certain Credit Agreement, dated as of August 2, 2019, (as amended by that certain (i) Amendment No. 1 to Credit Agreement and Waiver, dated as March 30, 2020, (ii) Amendment No. 2 to Credit Agreement, dated as of September 9, 2020 and (iii) Amendment No. 3 to Credit Agreement, dated as of October 23, 2020, and as further amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "Existing Credit Agreement"; and as amended hereby, the "Credit Agreement"), among the Borrower, the Guarantors, the Lenders, Administrative Agent, Collateral Agent and the other persons party thereto.

W I T N E S S E T H

WHEREAS, the Guarantors have previously entered into that certain Credit Agreement, dated as of September 16, 2019, as amended by the First Amendment and Waiver dated September 16, 2020 (as further amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "Leumi Credit Agreement"), by and among CL PI Holdings, certain Subsidiaries of CL PI Holdings (collectively, the "Leumi Loan Parties") and Bank Leumi USA ("Leumi"), pursuant to which Leumi makes certain working capital advances to the Leumi Loan Parties;

WHEREAS, the Collateral Agent has previously entered into that certain Intercreditor Agreement, dated September 16, 2019 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "Intercreditor Agreement"), by and between the Collateral Agent, Leumi and the Leumi Loan Parties;

WHEREAS, in connection with this Amendment, (a) Leumi and the Leumi Loan Parties are entering into a Second Amendment and Waiver to the Leumi Credit Agreement (the "Second Amendment and Waiver to Leumi Credit Agreement") and (b) Leumi, the Collateral Agent and the Leumi Loan Parties are entering into the First Amendment to the Intercreditor Agreement (the "First Amendment to Intercreditor");

WHEREAS, the Borrower has informed the Administrative Agent of (a) the failure of the financial statements delivered pursuant to Section 5.10 of the Credit Agreement for periods ended prior to the Amendment No. 4 Effective Date to fairly present in all material respects in accordance with GAAP the financial position of the Borrower and its Subsidiaries due to a company revaluation of inventory which occurred in the third quarter of 2020 as described in the email titled "CarbonLITE Inventory Revaluation" from the chief financial officer of the Borrower to the Administrative Agent which was sent on November 22nd at 4:49 p.m. ET and (b) the failure of the Borrower to deliver unaudited financial statements on a timely basis for the third quarter of

2020 as required by Section 5.10 of the Credit Agreement (collectively, the "Financial Statement Events of Default"); and

WHEREAS, pursuant to and in accordance with Section 10.02(b) of the Existing Credit Agreement, and, subject to the satisfaction of the conditions set forth herein, the Administrative Agent and the Lenders signatory hereto have agreed to make certain amendments to the Existing Credit Agreement and waive the Financial Statement Events of Default.

NOW, THEREFORE, in consideration of the premises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, agree as follows:

Section 1.    ***Definitions***.  Unless otherwise defined in this Amendment, each capitalized term used in this Amendment has the meaning assigned to such term in the Credit Agreement.

Section 2.    ***Amendments to the Credit Agreement***.  Effective as of the Amendment No. 4 Effective Date (as defined below), each of the Administrative Agent, the Lenders and the Borrower hereby agree to amend the Existing Credit Agreement as follows:

(a)    Section 1.01 of the Existing Credit Agreement is hereby amended by adding the following defined terms in the appropriate alphabetical order:

""Amcor Receivables" means all accounts receivable owing to the Loan Parties by Amcor Rigid Plastics USA Incorporated, Amcor Group GMBH, Amcor Canada, and/or its various subsidiaries and affiliates.

"Amendment No. 4 Effective Date" has the meaning assigned to such term in Amendment No. 3 and Waiver to this Agreement, dated as of December __, 2020, by and among the Administrative Agent, the Lenders, the Collateral Agent, the Borrower and the other Loan Parties.

"Citibank" means Citibank, N.A., and its branches and subsidiaries and affiliates.

"Citibank Financing Documents" means that certain Supplier Agreement, dated as of April 30, 2020, by and between CL Industries and Citibank, pursuant to which Citibank purchases from CL Industries, and CL Industries assigns to Citibank, certain accounts receivable, and all other agreements, documents and instruments now or at any time hereafter executed and/or delivered in connection with the same, in each case, as in effect as of the Amendment No. 4 Effective Date."

(b)    Section 1.01 of the Existing Credit Agreement is hereby amended by amending and restating the following definitions:

""Permitted Revolving Facility" means one or more secured or unsecured revolving credit facilities satisfying the following conditions: (i) such

2

Indebtedness is incurred to finance the working capital requirements of one or more of the Borrower Group Members; (ii) the aggregate principal amount of such Indebtedness incurred by (A) CL PI Holdings does not exceed $20,000,000, provided that such amount may be increased to $25,000,000 subject to documentation satisfactory to the Administrative Agent, (B) CL Recycling Holdings does not exceed $5,000,000 and (C) CL P Holdings does not exceed $6,000,000; (iii) such Indebtedness has no make-whole or similar prepayment premium; (iv) the lien and/or payment priorities thereunder are, as among the holders of such Indebtedness, pari passu (e.g., there are no "first-out" or "last-out" tranches); and (v) the providers of such Indebtedness (or an agent on their behalf) shall have executed an intercreditor agreement in favor of the Collateral Agent, in form and substance satisfactory to the Administrative Agent in its sole discretion."

(c)     Section 2.07(c) of the Existing Credit Agreement is hereby amended by adding the following to the end of such subsection:

"Notwithstanding the foregoing, and notwithstanding the provisions of Section 2.07(e) below, interest on the Loans that would be due on December 31, 2020 (which the parties acknowledge and agree is an amount equal to $2,223,118.95) shall instead be paid early by the Borrower to the Administrative Agent within three (3) Business days of the Amendment No. 4 Effective Date."

(d)     Section 5.11(c) of the Existing Credit Agreement is hereby amended and restated in its entirety as follows:

"(c) as soon as available, but in any event within two (2) days of any sale or proposed sale of Amcor Receivables, reports of all sales and proposed sales of such Amcor Receivables, in each case specifying the dollar amount thereof and the account debtor with respect thereto;"

(e)     Section 6.03(k) of the Existing Credit Agreement is hereby amended and restated in its entirety as follows:

"(k)(i) Liens securing obligations under any Permitted Revolving Facility, on the applicable Borrower Group Members' (A) accounts or proceeds arising from the sale of inventory or the provision of services, (B) all Inventory (as defined in the UCC), (C) any equipment which the Collateral Agent shall agree, in its sole discretion, can be subject to a prior Lien in favor of the Permitted Revolving Facility, (D) segregated proceeds of the foregoing (including any deposit accounts, securities accounts or commodities accounts holding solely such proceeds) and (E) books and records relating to the foregoing and (ii) solely for the six (6) month period occurring after the Amendment No. 4 Effective Date, a precautionary security interest and Lien of Citibank in and to the Amcor Receivables sold or assigned to it from time to time pursuant to and in accordance with the terms of the Citibank Financing Documents, to the extent any such sale or assignment is not deemed to constitute a true sale thereof, as

3

collateral security for the payment of the obligations of the Loan Parties to Citibank thereunder;"

(f)      Section 6.07(e)(v) of the Existing Credit Agreement is hereby amended and restated in its entirety as follows:

"(v) the sale of (A) inventory (if any) in ordinary course of business and (B) solely for the six (6) month period occurring after the Amendment No. 4 Effective Date, the sale or assignment of Amcor Receivables pursuant to and in accordance with the terms of the Citibank Financing Documents as in effect on the Amendment No. 4 Effective Date; provided, that, Lender shall at all times retain its junior Lien in and to all proceeds of each such sale or assignment;"

(g)      Section 6.17 of the Existing Credit Agreement is hereby amended and restated in its entirety as follows:

"6.17      <u>Citibank Financing Documents</u>.   Prior to the borrowing or application any funds under the Citibank Financing Documents, the Borrower shall obtain the prior written consent of the Administrative Agent (in its sole discretion) as to the application of funds."

(h)      Section 7.01(d)(i) of the Existing Credit Agreement is hereby amended and restated in its entirety as follows:

"(i) <u>Section 2.05(b)(v)</u> (as to delivery of detailed calculations of the Net Cash Flow amount), the last sentence of <u>Section 2.07(c)</u>, <u>Sections 5.01</u> (as to existence), <u>5.11(h)</u>, <u>5.13</u>, <u>5.21(g)</u> through <u>5.21(l)</u> or <u>Article VI</u>; or"

Section 3.      ***Waiver***.  The Existing Lenders, the Collateral Agent and the Administrative Agent hereby waive the Financial Statement Events of Default under the Credit Agreement and each other Financing Document.

Section 4.      ***Debt Service Reserve Account***.   The Borrower, the Guarantors, the Administrative Agent, the Collateral Agent and the Lenders party hereto each acknowledge and agree that (a) the Borrower is only permitted to access funds on deposit in the Debt Service Reserve Account to pay any Interest Payment Deficiency, (b) that the Control Agreement in respect of the Debt Service Reserve Account requires the account bank thereunder to first obtain the prior written consent of the Collateral Agent before making any transfers from the Debt Service Reserve Account and (c) any transfer of funds from the Debt Service Reserve Account for any purpose other than the payment of an Interest Payment Deficiency is an Event of Default.

Section 5.      ***Effectiveness of Amendment***.   This Amendment shall become effective on the date (the "<u>Amendment No. 4 Effective Date</u>") on which each of the following conditions is satisfied:

(a)      the Administrative Agent shall have received counterparts of this Amendment executed by the Administrative Agent, the Borrower and each Lender;

US-DOCS\119560011.11

(b)      the Administrative Agent shall have received an executed borrowing notice, requesting a borrowing on the date hereof under the Leumi Credit Agreement, which shows funds in at least the amount of $2,223,118.95 to be used to make the interest payment in respect of the Loans due on December 31, 2020;

(c)      the Administrative Agent shall have received a copy of the Second Amendment and Waiver to Leumi Credit Agreement, in a form satisfactory to the Administrative Agent, fully executed by Leumi and the Leumi Loan Parties;

(d)      the Administrative Agent shall have received a copy of the First Amendment to Intercreditor, in a form satisfactory to the Administrative Agent, fully executed by Leumi, the Collateral Agent and the Leumi Loan Parties, in each case, in their respective capacity specified therein;

(e)      the Administrative Agent shall have received an updated and reasonably satisfactory copy of the financial statements required to be delivered pursuant to Section 5.10(b) of the Credit Agreement for the fiscal quarter ending September 30, 2020; and

(f)      the Administrative Agent, the Lenders and their counsel shall have been paid or reimbursed by the Borrower for all reasonable and documented out-of-pocket costs and expenses associated with the preparation, negotiation and execution of this Agreement and the other instruments and documents to be delivered hereunder and the transactions contemplated hereby.

Section 6.      ***Ratification of Obligations***.    Each of the Borrower and Guarantors each hereby (a) ratifies and confirms all of their respective Obligations under the Credit Agreement and the other Financing Documents related thereto, (b) affirms that, after giving effect to this Amendment, all of its pledges, grants of security interests and Liens and other obligations under the Security Documents are reaffirmed and remain in full force and effect on a continuous basis, (c) reaffirms each Lien granted by it to the Collateral Agent and (d) acknowledges and agrees that the grants of security interests and Liens by it contained in the Security Documents are, and shall remain, in full force and effect on and after the Amendment No. 4 Effective Date.

Section 7.      ***Representations and Warranties.***    In order to induce each other party hereto to enter into this Amendment, each Loan Party represents and warrants to each other party hereto as follows:

(a)      Each Loan Party has full corporate, limited liability company or other organizational powers, authority and legal right to enter into, deliver and perform its respective obligations under the Amendment to consummate each of the transactions contemplated herein and therein, and has taken all necessary corporate, limited liability company or other organizational action to authorize the execution, delivery and performance by it of the Amendment. The Amendment has been duly executed and delivered by such Loan Party and is in full force and effect and constitutes a legal, valid and binding obligation of such Loan Party, enforceable against such Loan Party in accordance with its respective terms, except as enforcement may be limited (i) by Bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance or other

similar laws affecting creditors' rights generally, (ii) by general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law) and (iii) by implied covenants of good faith and fair dealing.

(b)     The execution, delivery and performance by each Loan Party of this Amendment and all other documents and instruments to be executed and delivered hereunder by it, as well as the consummation of the transactions contemplated herein and therein, do not and will not (i) conflict with the Organizational Documents of such Loan Party, (ii) conflict with or result in a breach of, or constitute a default under, any indenture, loan agreement, mortgage, deed of trust or other material instrument or agreement to which such Loan Party (and, as of the Amendment No. 4 Effective Date, any Non-Guarantor Subsidiary) is a party or by which it is bound or to which such Loan Party's (and, as of the Amendment No. 4 Effective Date, any Non-Guarantor Subsidiary's) property or assets are subject, (iii) conflict with or result in a breach of, or constitute a default under, in any material respect, any Applicable Law or (iv) with respect to each Loan Party (and, as of the Amendment No. 4 Effective Date, each Non-Guarantor Subsidiary), result in the creation or imposition of any Lien (other than a Permitted Lien) upon any of such Borrower Group Member's property or the Collateral.

(c)     Each Loan Party (and, as of the Amendment No. 4 Effective Date, each Non-Guarantor Subsidiary) has obtained all material Authorizations required under any Applicable Law to be issued to, assigned to, or otherwise assumed by, such Borrower Group Member and necessary for (i) the Business or (ii) the execution, delivery and performance by each Loan Party of this Amendment other than, in each case, Authorizations that are not currently necessary and are obtainable in the ordinary course of business.

(d)     Each Loan Party (and, as of the Amendment No. 4 Effective Date, each Non-Guarantor Subsidiary) is in material compliance with each Authorization by a Governmental Authority currently in effect.

(e)     As of the Amendment No. 4 Effective Date, the conditions precedent set forth in <u>Section 5</u> above have been satisfied.

Section 8.     ***Governing Law***.   THIS AMENDMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS AMENDMENT (INCLUDING ANY CLAIM OR CONTROVERSY ARISING OUT OF OR RELATING TO THIS AMENDMENT WHETHER SOUNDING IN CONTRACT LAW, TORT LAW OR OTHERWISE) SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES THAT WOULD RESULT IN THE APPLICATION OF ANY LAW OTHER THAN THE LAW OF THE STATE OF NEW YORK.

Section 9.     ***Miscellaneous***.

(a)     On and after the Amendment No. 4 Effective Date, each reference in the Credit Agreement to "this Agreement", "hereunder", "hereof" or words of like import,

referring to the Credit Agreement, and each reference in each other Financing Document to "the Credit Agreement", "thereunder", "thereof" or words of like import referring to the Credit Agreement, shall mean and be a reference to the Credit Agreement as amended or otherwise modified by this Amendment.  This Amendment shall constitute a Financing Document for purposes of the Credit Agreement.

(b)    The execution, delivery and effectiveness of this Amendment shall not operate as a waiver of any default of the Borrower or any right, power or remedy of the Administrative Agent or the Lenders under any of the Financing Documents, nor constitute a waiver of any provision of any of the Financing Documents.

Section 10.    *Severability*.    Any provisions of this Amendment held by a court of competent jurisdiction to be invalid or unenforceable shall not impair or invalidate the remainder of this Amendment and the effect thereof shall be confined to the provisions so held to be invalid.

Section 11.    *Successors and Assigns*.    This Amendment is binding upon and shall inure to the benefit of the Administrative Agent, the Lenders and the Borrower and their respective successors and permitted assigns.

Section 12.    *Counterparts*.    This Amendment may be executed by one or more of the parties to this Amendment on any number of separate counterparts (including by facsimile or other electronic transmission, *i.e.* a "pdf" or a "tif"), and all of said counterparts taken together shall be deemed to constitute one and the same instrument.  A set of the copies of this Amendment signed by all parties shall be lodged with the Borrower and the Administrative Agent.  The words "execution," "execute", "signed," "signature," and words of like import in or related to any document to be signed in connection with this Amendment shall be deemed to include electronic signatures, deliveries or the keeping of records in electronic form, each of which shall be of the same legal effect, validity or enforceability as a manually executed signature or the use of a paper-based recordkeeping system, as the case may be, to the extent and as provided for in any applicable law, including the Federal Electronic Signatures in Global and National Commerce Act, the New York State Electronic Signatures and Records Act, or any other similar state laws based on the Uniform Electronic Transactions Act.

Section 13.    *Headings*.    The headings, captions and arrangements used in this Amendment are for convenience only and shall not affect the interpretation of this Amendment or any other Financing Document.

Section 14.    *Integration*.    This Amendment represents the agreement of the Borrower, the Administrative Agent and the Lenders with respect to the subject matter hereof, and there are no promises, undertakings, representations or warranties by the Borrower, any Agent nor any Lender relative to subject matter hereof not expressly set forth or referred to herein.

*[Signature Pages Follow]*

7

IN WITNESS WHEREOF, each of the parties hereto has caused this Amendment to be executed by its officer(s) thereunto duly authorized as of the date first above written.

CarbonLite Holdings, LLC

By _____
Leon Farahnik
Chief Executive Officer


CarbonLite Sub-Holdings, LLC
    By CarbonLite Holdings, LLC, its sole member

    By _____
    Leon Farahnik
    Chief Executive Officer


CarbonLITE PI Holdings, LLC
    By CarbonLite Sub-Holdings, LLC, its sole
    Member
        By CarbonLite Holdings, LLC, its sole
        member

        By _____
        Leon Farahnik
        Chief Executive Officer


CarbonLite Industries LLC
    By CarbonLITE PI Holdings LLC, its sole
    Member
        By CarbonLite Sub-Holdings, LLC, its sole
        Member
            By CarbonLite Holdings, LLC, its sole
            member

            By _____
            Leon Farahnik
            Chief Executive Officer


[CarbonLite – Amendment No. 4 to Credit Agreement]

CarbonLite Pinnpack, LLC
    By CarbonLITE PI Holdings, LLC, its sole
    Member
        By CarbonLite Sub-Holdings, LLC, its sole
        Member
            By CarbonLite Holdings, LLC, its sole
            member

            By _____
            Leon Farahnik
            Chief Executive Officer


PinnPack Packaging, LLC
    By CarbonLITE Pinnpack, LLC, its Managing
    Member
        By CarbonLITE PI Holdings, LLC, its sole
        Member
            By CarbonLite Sub-Holdings, LLC, its
            sole Member
                By CarbonLite Holdings, LLC, its
                sole member

                By _____
                Leon Farahnik
                Chief Executive Officer

PinnPack P, LLC

By _____
    Leon Farahnik
    Chief Executive Officer

ORION ENERGY PARTNERS INVESTMENT
AGENT, LLC,
as Administrative Agent and Collateral Agent

By:_____
        Name: Gerrit Nicholas
        Title: Managing Partner


ORION ENERGY CREDIT OPPORTUNITIES
FUND II, L.P.,
as a Lender

By: Orion Energy Credit Opportunities Fund II GP,
L.P.
Its: General Partner

By: Orion Energy Credit Opportunities Fund II
Holdings, LLC
Its: General Partner

By:_____
        Name: Gerrit Nicholas
        Title: Managing Partner


ORION ENERGY CREDIT OPPORTUNITIES
FUND II PV, L.P.,
as a Lender

By: Orion Energy Credit Opportunities Fund II GP,
L.P.
Its: General Partner

By: Orion Energy Credit Opportunities Fund II
Holdings, LLC
Its: General Partner

By:_____
        Name: Gerrit Nicholas
        Title: Managing Partner


[CarbonLite – Amendment No. 4 to Credit Agreement]

ORION ENERGY CREDIT OPPORTUNITIES
FUND II GPFA, L.P.,
as a Lender

By: Orion Energy Credit Opportunities Fund II GP,
L.P.
Its: General Partner

By: Orion Energy Credit Opportunities Fund II
Holdings, LLC
Its: General Partner

By: _____
    Name: Gerrit Nicholas
    Title: Managing Partner


ORION ENERGY CREDIT OPPORTUNITIES
CARBONLITE CO-INVEST, L.P.,
as a Lender

By: Orion Energy Credit Opportunities Fund II GP,
L.P.
Its: General Partner

By: Orion Energy Credit Opportunities Fund II
Holdings, LLC
Its: General Partner

By: _____
    Name: Gerrit Nicholas
    Title: Managing Partner


[CarbonLite – Amendment No. 4 to Credit Agreement]