IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CARBONLITE HOLDINGS LLC, et al.,[1] | Case No. 21-10527 (JTD) |
| Debtors. | Jointly Administered |
| BAHRAM NOUR-OMID, an individual, and LEARNICON LLC, a Delaware limited liability company, | Adv. No. 21-50317 (JTD) |
| Plaintiffs, | |
| v. | |
| CARBONLITE HOLDINGS LLC, a Delaware limited liability company, LF INVESTMENT HOLDINGS, LLC, a Delaware limited liability company, LEON FARAHNIK, an individual, KIM JEFFERY, an individual, FARAMARZ YOUSEFZADEH, an individual, ORION ENERGY CREDIT OPPORTUNITIES FUND II, L.P., a Delaware limited partnership, ORION ENERGY CREDIT OPPORTUNITIES FUND II PV, L.P., a Delaware limited partnership, ORION ENERGY CREDIT OPPORTUNITIES FUND II GPFA, L.P., a Delaware limited partnership, FORCE TEN PARTNERS, LLC, a Delaware limited liability company, BRIAN WEISS, an individual, and DOES 1 through 50, inclusive, | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEBTOR
CARBONLITE HOLDINGS LLC TO DISMISS COMPLAINT OR, ALTERNATIVELY,
TO STAY THIS LITIGATION AS TO ALL PARTIES**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: CarbonLite Holdings LLC (8957); CarbonLite Industries LLC (3596); CarbonLite P Holdings, LLC (8957); CarbonLite P, LLC (5453); CarbonLite PI Holdings, LLC (8957); CarbonLite PinnPack, LLC (8957); CarbonLite Recycling Holdings LLC (8957); CarbonLite Recycling LLC (3727); CarbonLite Sub-Holdings, LLC (8957); PinnPack P, LLC (8322); and PinnPack Packaging, LLC (9948). The address of the Debtors' corporate headquarters is 10250 Constellation Blvd., Los Angeles, CA 90067.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

THE COMPLAINT ............................................................................................................... 7

ARGUMENT ...................................................................................................................... 10

    A.    The Complaint Should Be Dismissed Because There Is No Justiciable Controversy or Ripe Claim to Be Determined; Plaintiffs Lack Jurisdictional Standing ............................................................................................. 10

    B.    Alternatively, This Adversary Proceeding Should Be Stayed Pending the Sale .. 14

    C.    The Complaint Asserts Procedurally Improper Prepetition Monetary Claims That Should Be Dismissed as to All Defendants ................................................. 15

    D.    The Complaint Should Be Dismissed for Failure to State a Claim Against the Debtor .......................................................................................................... 17
        i.    Federal Rule of Civil Procedure 12(b)(6) ..................................... 17
        ii.    Count IV: Aiding and Abetting Breach of Fiduciary Duty ........... 18
        iii.    Count V: Breach of Implied Covenant of Good Faith and Fair Dealing ...................................................................................... 19
        iv.    Counts VI & VII: Tortious Interference Claims ........................... 21

CONCLUSION................................................................................................................... 22

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Aetna Life Ins. v. Haworth,*
    300 U.S. 227 (1937)......................................................................................................... 13

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)......................................................................................................... 17

*Bechtel Corp. v. Laborers' Int'l Union,*
    544 F.2d 1207 (3d Cir. 1976)......................................................................................... 14

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)......................................................................................................... 17

*Berg v. Obama,*
    586 F.3d 234 (3d Cir. 2009)........................................................................................... 12

*Blunt v. Lower Merion Sch. Dist.,*
    767 F.3d 247 (3d Cir. 2014)........................................................................................... 12

*Buckaloo v. Johnson,*
    14 Cal. 3d 815 (1975) ..................................................................................................... 21

*Conn v. Dewey & LeBoeuf (In re Dewey & LeBoeuf),*
    487 B.R. 169 (Bankr. S.D.N.Y. 2013)........................................................................... 16

*DBL Liq. Trust v. P.T. Tirtamas Majutama (In re Drexel Burnham Lambert Grp..),*
    148 B.R. 993 (S.D.N.Y. 1992)........................................................................................ 16

*Dow Chem. Co. v. Exxon Chem. Patents,*
    No. 94-572, 1996 U.S. Dist. LEXIS 14741 (D. Del. Sept. 20, 1996)........................... 12

*Earl H. Galitz P.A. v. Edghill (In re Edghill),*
    113 B.R. 783 (Bankr. S.D. Fla. 1990) ........................................................................... 16

*Evergreen Solar v. Lehman Bros.,*
    No. 08-01633, 2011 Bankr. LEXIS 629 (Bankr. S.D.N.Y. Feb. 22, 2011)................... 16

*Falkenberg Cap. Corp. v. Dakota Cellular,*
    925 F. Supp. 231 (D. Del. 1996)................................................................................... 17

*Finkelman v. NFL,*
    810 F.3d 187 (3d Cir. 2016)........................................................................................... 12

*Funk v. Allstate Ins. Co.,*
    No. 13-CV-5933, 2013 U.S. Dist. LEXIS 177799, 2013 WL 6537031 (E.D.N.Y. Dec. 13,
    2013) ............................................................................................................................... 20

*Harris v. Provident Life & Accident Ins. Co.,*
    310 F.3d 73 (2d Cir. 2002).............................................................................................. 20

*Hatae v. Pentax Precision Instrument Corp.,*
    2004 N.Y.L.J. LEXIS 3067 (N.Y. Sup. July 22, 2004) ................................................. 20

*Heley/Mellon-Stuart Co. v. Coastal Grp. (In re Coastal Grp.),*
    100 B.R. 177 (Bankr. D. Del. 1989) .............................................................................. 16

*Imperial Ice Co. v. Rossier,*
    18 Cal. 2d 33 (1941) ....................................................................................................... 21

*In re Basic Food Grp., LLC,*
    No. 15-10892 (JLG), 2018 WL 5805943 (Bankr. S.D.N.Y. Oct. 31, 2018) .................. 19

*In re Hodges,*
    83 B.R. 25 (Bankr. N.D. Cal. 1988) .............................................................................. 16

*In re Penney*
    76 B.R. 160 (Bankr. N.D. Cal. 1987) .................................................................. 16
*Keefe v New York Law School*,
    71 A.D.3d 569, N.Y.S.2d 94 (N.Y. Sup. 2010) ................................................... 20
*Landis v. North Am. Co.*,
    299 U.S. 248 (1936)........................................................................................... 15
*LaSala v. Needham & Co.*,
    399 F. Supp. 2d 421 (S.D.N.Y. 2005).................................................................. 14
*Levya v. Certified Grocers*,
    593 F.2d 863-64 (9th Cir. 1979) ......................................................................... 14
*Lopez v. City of Hous.*,
    617 F.3d 336 (5th Cir. 2010)) ............................................................................. 11
*Lower Colo. River Auth. v. Papalote Creek II*,
    858 F.3d 916 (5th Cir. 2017) .............................................................................. 11
*Malpiede v. Townson*,
    780 A.2d 1075 (Del. 2001) ................................................................................. 18
*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007)........................................................................................... 11
*Mediterranean Enter. v. Ssangyong Corp.*,
    708 F.2d 1458 (9th Cir. 1983) ............................................................................ 14
*Moss v. United States Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009). ............................................................................. 17
*Murphy v. American Home Products Corp.*,
    58 N.Y.2d 293 (1983) ......................................................................................... 20
*N.J. Physicians Inc. v. United States*,
    653 F.3d 234 (3d Cir. 2011)................................................................................ 12
*Neale v. Volvo Cars*,
    794 F.3d 353 (3d Cir. 2005)................................................................................ 12
*O'Shea v. Littleton*,
    414 U.S. 488 (1974)........................................................................................... 12
*Pacific Gas & Elec. v. Bear Stearns & Co.*,
    50 Cal. 3d 1118 (1990) ....................................................................................... 21
*Reeves v. Hanlon*,
    33 Cal. 4th 1140 (2004) ...................................................................................... 21
*Revel AC, Inc. v. IDEA Boardwalk*
    802 F.3d 558 (3d Cir. 2015)................................................................................ 11
*Sherwin-Williams Co. v. Cty. of Delaware*,
    968 F.3d 264 (3d Cir. 2020), *cert. denied*, 2021 U.S. LEXIS 2213 (April 26, 2021) .............. 11
*Taliaferro v. Darby Twp.*,
    458 F.3d 181 (3d Cir. 2006)................................................................................ 12
*Westside Ctr. v. Safeway Stores*,
    42 Cal. App. 4th 507 (1996) ............................................................................... 21
*Whitmore v. Arkansas*,
    495 U.S. 149 (1990)........................................................................................... 12

DOCS_LA:338057.2

Defendant CarbonLite Holdings, LLC (the "Debtor" or "CarbonLite"), by and through its counsel, hereby files this memorandum of law in support of its motion to dismiss that certain *Complaint* (the "Complaint")[1] filed by Plaintiffs Bahram Nour-Omid ("Nour-Omid") and Learnicon LLC ("Learnicon" and, together with Nour-Omid, "Plaintiffs") in the above-captioned adversary proceeding against all Defendants with prejudice or, in the alternative, to stay this litigation as to all parties.

## PRELIMINARY STATEMENT

1.      The Debtor seeks to dismiss the entirety of the Complaint with prejudice or, alternatively, to stay this litigation because the claims asserted by Plaintiffs have no basis in fact or law.  Most glaring, this Court lacks jurisdiction over the Complaint because there is no justiciable controversy that is ripe for decision.  Plaintiffs lack jurisdictional standing and will never be able to prove any damages or injury-in-fact because their claims are based on a subordinated and out-of-the-money participation interest (called the Tranche B Loans) in a secured loan facility extended by Orion (as defined below).  The fact that the Tranche B Loans are out of the money will be confirmed once the sales of the Debtors' California facilities are consummated in June 2021—likely prior to the hearing on this Motion.  Hence, there is no justiciable controversy pending in this adversary proceeding.

2.      Even if all of Plaintiffs' allegations are reasonably accepted as true, they have suffered *zero damages and no injury-in-fact*.  Indeed, the Complaint is nothing more than a vexatious and sanctionable attempt by Plaintiffs, who are (at most) indirect third-party creditors of the Debtor on a prepetition claim, to assign blame for their own failure to adequately monitor

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Complaint.

a loan made to a nondebtor.  Yet, Plaintiffs have chosen to sue not only the Debtor, but its directors and chief restructuring officer personally, in order to harass the Debtor's representatives and gain some form of leverage or litigation advantage.[2]  As addressed further below, the Debtor urges the Court not to countenance such transgressions, which border on Rule 11 violations.[3]

   3. The Debtor is the Borrower under that certain *Credit Agreement* with Defendants Orion Energy Credit Opportunities II, L.P., Orion Energy Credit Opportunities II PV, L.P., and Orion Energy Credit Opportunities II GPFA, L.P. (together, "Orion"), as lenders, originally dated as of August 2, 2019 (as amended, the "Credit Agreement"), pursuant to which the Debtor borrowed over $90 million in three tranches: Tranche A Loans, in the amount of $80,000,000; Tranche B Loans, in the amount of $5,250,000; and Tranche C Loans, in the amount of $5,484,035.34.  Complaint at ¶ 22.  The Orion entities are the only lenders under the Credit Agreement; however, Orion sold a 100% participation interest in the Tranche B Loans (the "Participation") to Defendant LF Investment Holdings, LLC "LFIH"), an affiliate of Defendant Leon Farahnik ("Farahnik") in October 2020.[4]  *See id*. at ¶ 24.  Plaintiff Learnicon LLC, which is controlled through its managing member Plaintiff Nour-Omid, allegedly acquired the Participation from LFIH in February 2021, ***after the consummation of all of the transactions that are challenged in the Complaint***.  *See id*. at ¶ 40.  As the alleged holder of the

---

[2] The Debtor has indemnification obligations to its directors and officers and has already made a claim on its insurance policy with respect to this lawsuit.

[3] The Debtor reserves all rights to bring a motion for sanctions against Plaintiffs at the appropriate time.

[4] Defendant Farahnik is the founder and chief executive officer of the Debtor and a member of the Debtor's board of directors.

Participation, Learnicon may hold certain indirect economic interests in the Tranche B Loans. Notably, however, the Debtor is not alleged to have had at the time it entered into the Forbearance Agreement, and has never had, a direct contractual relationship with either of the Plaintiffs with respect to the Tranche B Loans. The Debtor's obligations under the Credit Agreement are to Orion alone.

4.       The allegations in the Complaint relate to modifications of the relative payment priorities between the Tranche A Loans, Tranche B Loans, and Tranche C Loans pursuant to that certain *Forbearance Agreement and Amendment No. 5 to Credit Agreement* dated February 8, 2021, among the Debtor, its affiliates, and Orion (the "Forbearance Agreement").[5] Complaint at ¶¶ 34, 35. The Tranche C Loans were made as part of the Forbearance Agreement and the Tranche B Loans were then subordinated to the new Tranche C Loans. *Id.* at ¶35. However, it is undisputed that the $80,000,000 in Tranche A Loans held by Orion ***always had priority over*** the Tranche B Loans, except in very narrow circumstances that do not apply here.[6]

5.       Specifically, prior to the Forbearance Agreement, the Tranche A Loans were required to be paid first and prior to the Tranche B Loans, except in the limited events of a "Qualified PinnPack Sale" (*i.e.*, a sale of the PinnPack facility for $25 million or more approved by Orion) or an equity raise, neither of which has happened (or will happen). *See* Complaint at ¶ 35. After the Forbearance Agreement, the Tranche B Loans were further subordinated to a

---

[5]  A later Amendment No. 6 to the Credit Agreement dated as of March 1, 2021, increased the borrowings under the Tranche C Loans to the current principal amount of $5,484,035.34.

[6]  There is now an additional $20 million of new money debtor-in-possession financing advances owed by the Debtor to Orion that are senior to the Tranche A Loans.

3

relatively small amount of new Tranche C Loans and the prepayment rights associated with a

Qualified PinnPack Sale were eliminated with the consent of both Orion (the only Lenders under

the Credit Agreement) and LFIH (the only holder of a participation interest in the Tranche B

Loans at the time). *Id*. at ¶¶ 35, 36. Importantly, however, the Tranche B Loans were not

prejudiced because those loans were always subordinate to the Tranche A Loans, no Qualified

PinnPack Sale had occurred (or will ever occur), and the Debtor badly needed additional

liquidity to preserve the value of its assets that served as collateral for all of the loans under the

Credit Agreement.

6. The Debtor now expects that the Tranche A Loans, half of which have

been rolled up as part of a postpetition debtor-in-possession financing facility, will receive only a

fractional recovery in these bankruptcy cases.[7] This fact will be confirmed in the coming weeks,

likely prior to the hearing on this Motion, as the Debtors close asset sales following robust

marketing and auction processes. Therefore, even if the Forbearance Agreement somehow

violated Plaintiffs' rights (which it did not), Plaintiffs will be unable to prove any damages

because there are no realistic circumstances where value will be available to the Tranche B

Loans (*i.e.* even if the Forbearance Agreement had never existed). For this reason alone, this

adversary proceeding should be dismissed as to all Defendants for failure to assert a justiciable

controversy or ripe claim or, alternatively, stayed pending the outcome of the sales process.

7. Further, the Complaint should be dismissed because it is procedurally

improper. Plaintiffs assert nothing more than a monetary prepetition claim against the Debtor.

---

[7]  The Tranche A Loans are also junior to $20 million of new money advanced to the Debtor postpetition by Orion.

As such, they can file a proof of claim like other actual creditors.[8]  There is no need for an adversary proceeding against the Debtor (or any other Defendant) when the matter can be addressed through the claim allowance process at the appropriate time.  Plaintiffs' only non-monetary claim for relief against the Debtor seeks a declaratory judgment with respect to the relative priorities of the Tranche B Loans vis-à-vis the Tranche A Loans and the Tranche C Loans, which is an intercreditor issue.  As noted above, the Court does not have jurisdiction to enter a declaratory judgment on these priority issues given that the dispute is hypothetical.  The Tranche A Loans will not be paid in full and there will be no Qualified PinnPack Sale or equity contribution.  Stated simply, there would be no recovery on the Tranche B Loans, whether they were subordinated to the Tranche C Loans or not, and whether the terms governing the Tranche B Loans were modified by the Forbearance Agreement or not.

8.     Finally, even if the Court were to reach the merits of Plaintiffs' claims against the Debtor, Counts IV (Aiding and Abetting Breach of Fiduciary Duty), V (Breach of Implied Covenant of Good Faith and Fair Dealing), VI (Tortious Interference with Contractual Relations), and VII (Tortious Interference with Economic Relations), which are the only tort counts naming the Debtor, suffer from a myriad of additional defects and must be dismissed.  Specifically, no Defendant is adequately alleged to have (or as a matter of law ever has) owed fiduciary duties to Plaintiffs, so the Debtor could not have aided and abetted any alleged breach thereof.  Plaintiff Learnicon is merely an indirect creditor of the Debtor—***at least three steps***

---

[8]   In fact, Learnicon has already filed proofs of claim against not only the Debtor, but also all the other affiliated debtors in these bankruptcy cases, even though Learnicon has no claim against any of these entities.   Moreover, the Tranche B Loans are already allowed claims against the Debtor based upon the Debtor's stipulations in the debtor-in-possession financing orders in the Debtor's main case.

*removed*.  The Debtor owes money to Orion under the Credit Agreement, which includes the Tranche B Loans.  Complaint at ¶ 22.  In October 2021, Orion sold the Participation interest in the Tranche B Loans to LFIH.  *Id*. at ¶ 24.  Later, ***after the Forbearance Agreement was executed in February 2021***, LFIH allegedly sold that Participation to Learnicon.  *Id*. at ¶ 40.  Learnicon acknowledged, at the time, that it was aware of the Forbearance Agreement.  The Debtor and its officers and directors, in their capacities as such, have no privity with Learnicon.  While Plaintiff Nour-Omid was a member of the Debtor's board of directors until he resigned on February 12, 2021, that does not mean that the Debtor (or any other Defendants) owed him, at the time of the Forbearance Agreement, a fiduciary duty in his capacity as a principal of Plaintiff Learnicon, an alleged creditor of a non-debtor.  The Debtor was never party to any contract with Plaintiffs relating to the Tranche B Loans and, as a result, there can be no implied covenant of good faith and fair dealing to breach.  As to tortious interference, Plaintiffs have not pled that the Debtor had knowledge of any agreement or economic relationship between Plaintiffs and LFIH, nor that the Debtor acted intentionally or improperly to interfere with respect thereto.

9.     Importantly, Plaintiffs acknowledge in the Complaint that Learnicon was not the holder of the Participation interest in the Tranche B Loans at the time the Forbearance Agreement was executed.  Complaint at ¶¶ 34, 40.  In fact, the only holder of that interest at the time of the Forbearance Agreement was LFIH, which expressly consented to the Forbearance Agreement.  *Id*. at ¶ 36.  Since Learnicon is alleged to have acquired the Participation only after the Forbearance Agreement was executed, Plaintiffs' allegations that the Debtor (and the other Defendants) owed any duties to Plaintiffs at the time of the Debtor's entry into the Forbearance

6

Agreement are, therefore, baseless and illogical.  Without even an indirect contractual

relationship with the Debtor at the time the Forbearance Agreement was executed, Plaintiffs lack

standing to challenge that transaction.  Moreover, Learnicon, as assignee of LFIH is bound by

LFIH's consent to the Forbearance Agreement.

　　　　　　　　10.　　　In the end, the Debtor and its officers and directors upheld their fiduciary

duties to the Debtor by raising necessary funds through amendments to the Credit Agreement

that were approved by all parties to that agreement.  They have done nothing wrong, even if the

allegations if the Complaint are accepted as true.  The Tranche B Loans would have been out of

the money whether or not the Forbearance Agreement was executed.  The Debtor and its officers

and directors, even on the face of the Complaint, did not owe any special duties to Plaintiffs (or

its assignor, LFIH) or commit any tortious acts.  Plaintiffs apparently made an ill-advised

prepetition investment when they purchased a participation interest in the Tranche B Loans, after

the Forbearance Agreement was executed.  Now, angry that the investment failed (for reasons

other than the entry into the Forbearance Agreement), Plaintiffs have decided to sue *every* party

that is even arguably associated with the investment.  That is neither an appropriate nor a

legitimate strategy for the prosecution of an adversary proceeding and it should be stopped in its

tracks.  Accordingly, the Debtor seeks to dismiss the Complaint as to all Defendants or,

alternatively, to stay this litigation.

## THE COMPLAINT

　　　　　　　　11.　　　On April 12, 2021, Plaintiffs filed their complaint against the Debtor, its

directors (Farahnik, Kim Jeffery, and Faramarz Yousefzadeh), and its chief restructuring officer

(Brian Weiss) and his firm, Force Ten Partners LLC.[9]  Farahnik's lending entity, LFIH, is also a

Defendant, as is Orion and various "DOES" to be named.

12.     Generally speaking, the Complaint seeks tort damages for fraud, negligent

misrepresentation, breach of fiduciary duty, tortious interference, and related claims against

Defendants for effectuating a subordination of the Tranche B Loans to the Tranche C Loans and

otherwise revising the terms governing the Tranche B Loans purportedly at the expense of the

beneficial holders of such loans.  Plaintiffs effectively seek to blame others for their own failure

to monitor their loan to a nondebtor third party, LFIH.  From the perspective of the Debtor and

its officers and directors, the Debtor raised needed financing through the Tranche B Loans under

the Credit Agreement and, later, the Tranche C Loans effectuated through the Forbearance

Agreement.  The fact that Orion sold a participation interest in the Tranche B Loans to LFIH,

which apparently pledged such interest to Learnicon, or that LFIH later sold such participation

interest to Learnicon, is of no consequence to the Debtor or its board.  Indeed, the Debtor had no

contractual privity with Learnicon at any time.

13.     The Complaint acknowledges, in relevant part, that "[o]n or about October

23, 2020, in conjunction with Orion issuing the Tranche B Loans to CarbonLite, Orion,

CarbonLite, and LF Investment [LFIH] entered into a series of agreements to effectuate a sale of

the Tranche B Loans to LF Investment."  Complaint at ¶ 24.  LFIH, in turn, pledged its interest

in the Tranche B Loans to Learnicon.  *Id*. at ¶ 26.  Notably, Plaintiffs do not allege that the

Debtor ever had a direct relationship with Learnicon.

---

[9]  As noted above, the Debtor has indemnification obligations to its directors and officers and has already made a claim on its insurance policy with respect to this lawsuit.

14.     Later, "[o]n or about February 8, 2021, CarbonLite and Orion entered into the Forbearance Agreement and Amendment No. 5 to Credit Agreement dated February 8, 2021 (the "Forbearance Agreement")."  Complaint at ¶ 34.  As part of that transaction, "Mr. Farahnik signed a Consent on behalf of LF Investment, which stated: 'In connection with the entry by CarbonLite Holdings, LLC, its subsidiaries and Orion … into the Forbearance Agreement and Amendment No. 5 to the Credit Agreement (the 'Agreements'), I hereby certify on behalf of LF Investment Holdings LLC, that I have reviewed and approve of the Agreements.'"  *Id*. at ¶ 36.

15.     Finally, "[o]n or about February 16, 2021, LF Investment and Learnicon entered into a Membership Interest Purchase Agreement under which LF Investment sold its interest in the Participation Agreement with Orion (and all rights to the Tranche B Loans) directly to Learnicon.  Thus, whereas previously Learnicon had its Note secured by the Participation Agreement interest, Learnicon now owned the participation interest directly."  Complaint at ¶ 40.  The foregoing purchase agreement between LFIH and Learnicon is referenced herein as the "Participation Purchase Agreement."

16.     Under the Participation Purchase Agreement, Learnicon expressly acknowledged receiving copies of the original Participation agreement, the Credit Agreement, and all documents related to the Credit Agreement, and further acknowledged that it was specifically aware of the Forbearance Agreement previously entered into by CarbonLite and Orion.  In particular, Section 3(b) of the Participation Purchase Agreement provides:

> **Knowledge.** ***The Purchaser has received copies of the Participation Agreement, the Credit Agreement and all other documents relating thereto and is aware*** that the Borrowers under the Credit Agreement are in default, ***that the Agent has entered into***

9

> *a Forbearance Agreement with the Borrowers* and that pursuant to the Forbearance Agreement the Borrowers are preparing to file for Chapter 11. *Purchaser is knowledgeable* the business affairs and financial condition of CarbonLite Holdings LLC and its subsidiaries (collectively, "CarbonLite") which are the obligors under the Credit Agreement, *and has acquired sufficient information about CarbonLite to reach an informed and knowledgeable decision to purchase the Participation*.

(Emphasis added).

17.     The Complaint contains five counts specifically naming the Debtor: Count IV for aiding and abetting a breach of fiduciary duties, Count V for breach of the implied covenant of good faith and fair dealing, Count VI for tortious interference with contractual relations, Count VII for tortious interference with economic relations, and Count VIII for declaratory relief.

18.     As against the Debtor, the Complaint seeks (1) a monetary claim for prepetition conduct (Counts IV, V, VI, VII) and (2) "[a] judicial declaration that the Tranche B Loans (and Plaintiffs' rights and interests therein) maintain their priority over the Tranche C Loans and confirming the existence of the Tranche B priority in payout for a Qualified PinnPack Bid" (Count VIII).

## ARGUMENT

### A.     The Complaint Should Be Dismissed Because There Is No Justiciable Controversy or Ripe Claim to Be Determined; Plaintiffs Lack Jurisdictional Standing

19.     Even if all of Plaintiffs' allegations in the Complaint are accepted as true, they still fail to state a justiciable controversy or ripe claim. Why? Because the Tranche B Loans on which Plaintiffs' claims are based are, in all likelihood, worthless. This point will be confirmed once the Debtor's sales of its California facilities are consummated next month, which

likely will happen before the hearing on this Motion.  If, as expected, there are insufficient

proceeds from such sales to even come close to repaying the Tranche A Loans, and there is no

Qualified PinnPack Sale in excess of $25 million and no equity investment, then the Tranche B

Loans are out of the money.  If the Tranche B Loans are out of the money, then even if Plaintiffs

are correct that their rights were improperly prejudiced through the Forbearance Agreement, they

would have received nothing in any event.  Stated another way, there is no justiciable

controversy and no ripe claim pending in this adversary proceeding because Plaintiffs have

suffered ***no cognizable damages or injury-in-fact***.  The Complaint therefore must be dismissed

under Rule 12(b)(1) of the Federal Rules of Civil Procedure, made applicable by Federal Rule of

Bankruptcy Procedure 7012, for lack of subject matter jurisdiction.

20.    Like federal district courts, bankruptcy courts presiding over declaratory

judgment actions are limited by the jurisdictional constraints of Article III and the Declaratory

Judgment Act, which both grant jurisdiction only in actual cases or controversies. *E.g.*,

*MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 126 (2007); *Revel AC, Inc. v. IDEA*

*Boardwalk* 802 F.3d 558, 573 (3d Cir. 2015).

21.    Without an actual case or controversy, a federal court simply cannot act,

and the case must be dismissed.  *See Sherwin-Williams Co. v. Cty. of Delaware*, 968 F.3d 264,

268 (3d Cir. 2020), *cert. denied*, 2021 U.S. LEXIS 2213 (April 26, 2021) ; *Lower Colo. River*

*Auth. v. Papalote Creek II*, 858 F.3d 916, 924 (5th Cir. 2017) ("'a court has no power to decide

disputes that are not yet justiciable'") (quoting *Lopez v. City of Hous*., 617 F.3d 336, 341 (5th

Cir. 2010)); *Dow Chem. Co. v. Exxon Chem. Patents*, No. 94-572, 1996 U.S. Dist. LEXIS 14741,

*7 (D. Del. Sept. 20, 1996) ("the plaintiff has the burden of proof and must establish an actual

case or controversy . . . by the preponderance of the evidence"); *Berg v. Obama*, 586 F.3d 234,

242 (3d Cir. 2009) ("'Absent Article III standing, a federal court does not have subject matter

jurisdiction to address a plaintiff's claims, and they must be dismissed.'") (quoting *Taliaferro v.*

*Darby Twp*., 458 F.3d 181, 188 (3d Cir. 2006)).

      22.    Article III standing requires "'(1) an injury-in-fact, (2) a sufficient causal

connection between the injury and the conduct complained of, and (3) a likelihood that the injury

will be redressed by a favorable decision.'" *Finkelman v. NFL*, 810 F.3d 187, 193 (3d Cir. 2016)

(quoting *Neale v. Volvo Cars*, 794 F.3d 353, 358-59 (3d Cir. 2005)).  Injury-in-fact requires "'the

invasion of a concrete and particularized legally protected interest' resulting in harm 'that is

actual or imminent, not conjectural or hypothetical.'" *Id*. at 193 (quoting *Blunt v. Lower Merion*

*Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014); *N.J. Physicians Inc. v. United States*, 653 F.3d 234,

238 (3d Cir. 2011)).  "A harm is 'actual or imminent' rather than 'conjectural or hypothetical'

where it is presently or actually occurring, or is sufficiently imminent. . . . [P]laintiffs relying on

claims of imminent harm must demonstrate that they face a realistic danger of sustaining a direct

injury from the conduct of which they complain." *Blunt,* 767 F.3d at 278.  "Allegations of

possible future injury do not satisfy the requirements of Art. III.  A threatened injury must be

'certainly impending' to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158

(1990) (citation omitted).  And a party seeking equitable relief for a prospective injury must

show a "likelihood of substantial and immediate irreparable injury" to establish standing.

*O'Shea v. Littleton*, 414 U.S. 488, 502 (1974); *MedImmune*, 549 U.S. at 127 (declaratory

12

litigants cannot obtain an "opinion advising what the law would be upon a hypothetical state of facts'") (quoting *Aetna Life Ins. v. Haworth*, 300 U.S. 227, 241 (1937)).

23.     The Complaint fails to satisfy even the most basic requirement of "actual or imminent" harm or an injury-in-fact.  Plaintiffs have suffered no damages because the Tranche B Loans were always (and continue to be) subordinated to the Tranche A Loans under the circumstances here.  Put simply, the Tranche B Loans are out of the money and this point will be confirmed once the sales process for the Debtor's California facilities concludes.  The Debtor expects the Tranche A Loans held by Orion, half of which have been rolled up as part of a postpetition debtor-in-possession financing facility, will not recover anywhere close to par value.[10]  Moreover, there will not be a Qualified PinnPack Sale or some form of equity investment in the Debtor.  Hence, even if the Forbearance Agreement never existed, there would be no recovery on the Tranche B Loans and Plaintiffs would suffer no damages, aside from the loss of their chosen investment in the Tranche B Loans.

24.     Further, in Count VIII of the Complaint, Plaintiffs seek "[a] judicial declaration that the Tranche B Loans (and Plaintiffs' rights and interests therein) maintain their priority over the Tranche C Loans and confirming the existence of the Tranche B priority in payout for a Qualified PinnPack Bid[.]"  This count is a complete red herring.  The relative priority of Tranche B Loans versus Tranche C Loans is *irrelevant* because the Tranche B Loans remain subordinate to the Tranche A Loans – and the Tranche A Loans will not be paid in

---

[10]   As previously noted, there is now an additional $20 million of new money debtor-in-possession financing advances owed by the Debtor to Orion that are senior to the Tranche A Loans.

full. Nothing about the relative priority of the Tranche B Loans versus the Tranche C Loans will change that.

25.    Plaintiffs are simply disgruntled, out-of-the-money "creditors of a creditor" who have suffered no recoverable damages. Therefore, the Complaint must be dismissed for failure to assert a justiciable controversy or ripe claim and lack of subject matter jurisdiction under Rule 12(b)(1).

**B.    Alternatively, This Adversary Proceeding Should Be Stayed Pending the Sale**

26.    To the extent that the Court is not inclined to dismiss the Complaint, the Court should exercise its discretion and stay this adversary proceeding pending the outcome of the sales process for the Debtor's California facilities and confirmation as to the amount of any recoveries on account of the Tranche A Loans.

27.    "In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Bechtel Corp. v. Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976); *see also Mediterranean Enter. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) ("'[A] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.'") (quoting *Levya v. Certified Grocers*, 593 F.2d 863-64 (9th Cir. 1979)); *LaSala v. Needham & Co.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005) ("'The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its

own docket with economy of time and effort for itself, for counsel, and for litigants.'") (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)).

28.     This Court has ample authority, in its discretion, to stay this litigation pending the outcome of the ongoing sales process.  If, as the Debtor strongly suspects, the proceeds of a sale of the assets that serve as collateral for the Tranche A Loans and Tranche B Loans are insufficient to repay in full the Tranche A Loans to which the Tranche B Loans have always been subordinated, the Complaint should be dismissed at that time.

## C.     The Complaint Asserts Procedurally Improper Prepetition Monetary Claims That Should Be Dismissed as to All Defendants

29.     Pursuant to the debtor-in-possession financing orders in the Debtor's main case, Orion's claim against the Debtor for amounts owed under the Tranche B Loans has already been allowed.  To the extent that Plaintiffs have the right to assert separate claims against the Debtor instead of Orion under any applicable participation agreements, they may do so.  But regardless of which entity asserts the claim, the Debtor anticipates that any such claims will receive no distribution because they are subordinated to the Tranche A Loans, as described above.  Further, it is not procedurally proper for Plaintiffs to assert their prepetition monetary claims against the Debtor (or any other Defendant) through the means of this adversary proceeding.  The proper avenue for relief against the Debtor is the filing of a proof of claim.

30.     Bankruptcy Rule 7001 does not confer on a creditor the right to sue debtors for prepetition claims:

> The creditor took the unfounded position that B.R. 7001 conferred upon it the right to sue debtors on the contract after the debtor filed the bankruptcy petition so long as the suit was brought in the bankruptcy court. This Court scotched the notion in *In re Penney* 76

15

B.R. 160, 161 (Bankr. N.D. Cal. 1987) and awarded the debtor sanctions pursuant to Rule 9011.

*Heley/Mellon-Stuart Co. v. Coastal Grp. (In re Coastal Grp.)*, 100 B.R. 177, 178 (Bankr. D. Del. 1989) (quoting *In re Hodges*, 83 B.R. 25 (Bankr. N.D. Cal. 1988)); *see also Conn v. Dewey & LeBoeuf (In re Dewey & LeBoeuf)*, 487 B.R. 169, 178 (Bankr. S.D.N.Y. 2013) (concluding that claims for equitable relief require an adversary proceeding, while prepetition claims for damages must be asserted by proof of claim); *Evergreen Solar v. Lehman Bros.*, No. 08-01633, 2011 Bankr. LEXIS 629, at *24 (Bankr. S.D.N.Y. Feb. 22, 2011) (dismissing a claim for breach of contract because the claim should have been asserted "in accordance with the claims allowance process, and not be means of an adversary proceeding"); *DBL Liq. Trust v. P.T. Tirtamas Majutama (In re Drexel Burnham Lambert Grp..)*, 148 B.R. 993, 998 (S.D.N.Y. 1992) ("A claim for damages arising from pre-petition conduct is not one of [the] categories [enumerated in Bankruptcy Rule 7001]."); *Earl H. Galitz P.A. v. Edghill (In re Edghill)*, 113 B.R. 783, 784 (Bankr. S.D. Fla. 1990) (holding that a creditor is precluded from recovering damages in an adversary proceeding because the cause of action arose from prepetition conduct).

31.     Accordingly, this adversary proceeding is not the proper procedural vehicle for asserting prepetition monetary claims against the Debtor or any other party.  Count VIII, the only cause of action in the Complaint that does not seek monetary relief, is based upon the same set of facts as the remaining Counts and, in any case, must be dismissed because this Court does not have jurisdiction over a hypothetical dispute regarding the relative priority of the Tranche B Loans for all the reasons set forth above.

16

**D.    The Complaint Should Be Dismissed for Failure to State a Claim Against the Debtor**

i.    **Federal Rule of Civil Procedure 12(b)(6)**

32.    A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, made applicable by Federal Rule of Bankruptcy Procedure 7012, tests the legal

sufficiency of the claims asserted in the complaint, including, inter alia, whether the plaintiff has

met the requirements of Rule 8(a)(2).  If a claim as pleaded is insufficient because it lacks an

element necessary to establish the claim under any legal theory, a court must dismiss the claim

for violating the pleading requirements of the Federal Rules of Civil Procedure.  *See Falkenberg*

*Cap. Corp. v. Dakota Cellular*, 925 F. Supp. 231, 236-39 (D. Del. 1996) (dismissing claims

because they did not entitle the claimant to relief under any reasonable reading of the pleadings).

33.    A complaint must contain "sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The plausibility standard is not

akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

has acted unlawfully."  *Id*. (quoting *Twombly*)  "Where a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of entitlement to relief.'"  *Id*. (quoting *Twombly*, 550 U.S. at 557).

34.    "[T]o survive a motion to dismiss, the non-conclusory 'factual content,'

and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the

plaintiff to relief." *Moss v. United States Secret Serv*., 572 F.3d 962, 969 (9th Cir. 2009).

35.    The Complaint here fails to satisfy these minimal standards.  Even if all factual allegations in the Complaint were accepted as true, Counts IV (Aiding and Abetting Breach of Fiduciary Duty), V (Breach of Implied Covenant of Good Faith and Fair Dealing), VI (Tortious Interference with Contractual Relations), and VII (Tortious Interference with Economic Relations) against the Debtor lack plausibility or merit.

### ii.    Count IV: Aiding and Abetting Breach of Fiduciary Duty

36.    The elements of a claim for aiding and abetting breach of fiduciary duty are: (1) the party must know that a fiduciary relationship existed between a third person and the plaintiff bringing suit; (2) the third person must have breached a fiduciary duty to the plaintiff; (3) there must be "knowing participation" of the party in the fiduciary's breach of duty; and (4) there must be actual damages resulting from the breach.  *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001).[11]

37.    The Complaint alleges that Defendants Farahnik, Jeffery, Yousefzadeh, and Weiss "owed a fiduciary duty to plaintiff Nour-Omid by virtue of their position and relationship with CarbonLite and each other."  Complaint ¶ 46.  Further, "CarbonLite was at the center of all the relevant transactions that ultimately resulted in the Tranche B Loans being subordinated and plaintiff Nour-Omid's rights and interests therein being substantially impaired."  *Id*. ¶ 68.

38.    However, neither the Debtor nor the other Defendants owed any fiduciary duty to Plaintiffs with respect to the transactions that are the subject of the Complaint.  It was

---

[11]  The Debtor is a Delaware entity.

Learnicon—and not Nour-Omid—that held an interest in the Tranche B Loans.  There is no

allegation in the Complaint (nor can there be) that the Debtor or any other Defendant owed a

fiduciary duty to Learnicon, which at the time of the Forbearance Agreement was allegedly a

third-party creditor of LFIH that had no relationship at all with the Debtor.  Nor did the Debtor

or any other Defendant owe a fiduciary duty to Nour-Omid in his capacity as managing agent of

Learnicon.  In effect, Plaintiffs suggest that the Debtor and its board had fiduciary duties to a

third party creditor (Learnicon) of a non-debtor (LFIH) and should have divulged confidences

and made disclosures with respect to a Forbearance Agreement to which neither of the Plaintiffs

was a party.

39.    Without an underlying fiduciary relationship, there can be no breach on

which an aiding and abetting claim is predicated.  Moreover, as addressed above, Plaintiffs can

assert no claim for actual damages given that they would have recovered nothing even if there

had been no Forbearance Agreement.  Accordingly, Count IV must be dismissed.

### iii.    Count V: Breach of Implied Covenant of Good Faith and Fair Dealing

40.    Under New York law,[12] "[t]o establish a claim for breach of the implied

covenant, the plaintiff must demonstrate that the defendant *was a party to a contract* and that the

defendant sought to prevent performance of the contract or to withhold benefits under the

contract from the plaintiff." *In re Basic Food Grp., LLC*, No. 15-10892 (JLG), 2018 WL

5805943, at *7 (Bankr. S.D.N.Y. Oct. 31, 2018) (emphasis added).  Parties to an express contract

"are bound by an implied duty of good faith, but breach of that duty is merely a breach of the

---

[12]  The Credit Agreement is governed by New York law.

underlying contract." *Funk v. Allstate Ins. Co.*, No. 13-CV-5933, 2013 U.S. Dist. LEXIS

177799, 2013 WL 6537031, at \*4  (E.D.N.Y. Dec. 13, 2013) (*citing Harris v. Provident Life &*

*Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002)).

41.      Here, Plaintiffs, the Debtor, and its officers and directors had no

contractual relationship with respect to the Tranche B Loans.  "Absent the existence of a

contract, a claim alleging breach of the implied covenant of good faith and fair dealing is legally

unavailing."  *Keefe v New York Law School*, 71 A.D.3d 569, 897 N.Y.S.2d 94 (N.Y. Sup. 2010).

*Hatae v. Pentax Precision Instrument Corp.*, 2004 N.Y.L.J. LEXIS 3067, \*7 (N.Y. Sup. July 22,

2004) ("It is fundamental that the existence of an implied covenant of good faith and fair dealing

owed from one party to another depends on the existence of a contract between those parties. . . .

Without a contract there can be no implied covenant.") (*citing Murphy v. American Home*

*Products Corp.*, 58 N.Y.2d 293 (1983)).  Indeed, at the time the Forbearance Agreement was

executed, Learnicon had not even entered into an agreement to purchase the Participation from

LFIH.

42.      Without contractual privity (or any relevant contract at all), Plaintiffs have

no claim for breach of the implied covenant of good faith and fair dealing.  And again, Plaintiffs

cannot prove damages for all the reasons set forth above.  Accordingly, Count V must be

dismissed.

### iv.        Counts VI & VII: Tortious Interference Claims

43.        The Complaint asserts claims against the Debtor and others for intentionally interfering with the performance of a contract and intentionally interfering with economic relations.

44.        California has traditionally recognized two economic relations torts: interference with the performance of a contract, *Imperial Ice Co. v. Rossier*, 18 Cal. 2d 33, 35 (1941), and interference with a prospective economic relationship, *Buckaloo v. Johnson*, 14 Cal. 3d 815, 822 (1975).[13] "[B]oth of these torts protect the public interest in stable economic relationships . . . ." *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1152 (2004). The two torts are related but distinct. Tortious interference with contractual relations requires "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Id.* at 1148; *see Pacific Gas & Elec. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). Tortious interference with prospective economic advantage, on the other hand, does not depend on the existence of a legally binding contract. A plaintiff asserting this tort must show: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Westside Ctr. v. Safeway Stores*, 42 Cal. App. 4th 507, 521-22 (1996).

---

[13]  The torts at issue allegedly occurred in California.

45.     As discussed above, it is not clear from the Complaint whether Plaintiffs were party to any relevant contracts at the time the Forbearance Agreement was executed; indeed, Plaintiffs admit that Learnicon had not even entered into an agreement to purchase LFIH's Participation at that time.  And when Learnicon did acquire the Participation, Learnicon expressly acknowledged the existence of the Forbearance Agreement.  By contrast, the Complaint does not plead that the Debtor had knowledge of any particular contracts or economic relationship that were allegedly the subject of any intentional interference.  The Complaint merely summarily alleges that "each of the other Defendants knew, or at the very least had constructive knowledge, that Learnicon financed the Tranche B Loans" and "defendants . . . had full knowledge and awareness of the contracts between Plaintiffs and defendants LF Investment and Farahnik."  Complaint ¶ 82; *see also* ¶ 90.  Further, the Complaint contains no factual allegations to support the claims that the Debtor or anyone else committed intentional acts designed to induce a breach or disruption of any contractual or economic relationship (and there is no allegation that the Debtor was even aware of any alleged interest of Plaintiffs ***at the time*** of the Forbearance Agreement).  Finally, the Complaint fails to allege, and cannot allege, any cognizable damages theory.  Accordingly, Counts VI and VII must be dismissed.

## CONCLUSION

46.     For all of the foregoing reasons, the Debtor submits that the Complaint should be dismissed on all counts as to all Defendants with prejudice or, in the alternative, stayed as to all parties pending the outcome of the Debtor's ongoing sales process.

22

Dated:   May 26, 2021                    **PACHULSKI STANG ZIEHL & JONES LLP**

                                         */s/ James E. O'Neill*
                                         Richard M. Pachulski (CA Bar No. 90073)
                                         Gabriel I. Glazer (CA Bar No. 246384)
                                         James E. O'Neill (DE Bar No. 4042)
                                         Maxim B. Litvak (CA Bar No. 215852)
                                         919 N. Market Street, 17th Floor
                                         P.O. Box 8705
                                         Wilmington, DE 19899 (Courier 19801)
                                         Tel:  (302) 652-4100
                                         Fax: (302) 652-4400
                                         Email: rpachulski@pszjlaw.com
                                                 gglazer@pszjlaw.com
                                                 joneill@pszjlaw.com
                                                 mlitvak@pszjlaw.com

                                         *Attorneys for Defendant CarbonLite Holdings LLC*