## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CARBONLITE HOLDINGS LLC, *et al.*,[1] | Case No. 21-10527 (JTD) |
| Debtors. | (Jointly Administered) |
| BAHRAM NOUR-OMID, an individual, and LEARNICON LLC, a Delaware limited liability company, | |
| Plaintiffs, | Adversary Pro. No. 21-50317 (JTD) |
| v. | **DEMAND FOR JURY TRIAL** |
| CARBONLITE HOLDINGS LLC, a Delaware limited liability company, LF INVESTMENT HOLDINGS, LLC, a Delaware limited liability company, LEON FARAHNIK, an individual, KIM JEFFERY, an individual, FARAMARZ YOUSEFZADEH, an individual, ORION ENERGY CREDIT OPPORTUNITIES FUND II, L.P., a Delaware limited partnership, ORION ENERGY CREDIT OPPORTUNITIES FUND II PV, L.P., a Delaware limited partnership, ORION ENERGY CREDIT OPPORTUNITIES FUND II GPFA, L.P., a Delaware limited partnership, FORCE TEN PARTNERS, LLC, a Delaware limited liability company, BRIAN WEISS, an individual, and DOES 1 through 50, inclusive, | |
| Defendants. | |

## FIRST AMENDED COMPLAINT

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: CarbonLite Holdings LLC (8957); CarbonLite Industries LLC (3596); CarbonLite P Holdings, LLC (8957); CarbonLite P, LLC (5453); CarbonLite PI Holdings, LLC (8957); CarbonLite Pinnpack, LLC (8957); CarbonLite Recycling Holdings LLC (8957); CarbonLite Recycling LLC (3727); CarbonLite Sub-Holdings, LLC (8957); Pinnpack P, LLC (8322); and Pinnpack Packaging, LLC (9948). The address of the Debtors' corporate headquarters is 10250 Constellation Blvd., Los Angeles, CA 90067.

Plaintiffs Bahram Nour-Omid and Learnicon LLC (collectively, "Plaintiffs") hereby allege, by and through their undersigned counsel, upon personal knowledge as to themselves and their own acts and upon information and belief as to all other matters, as follows:

## PARTIES

1.      Plaintiff Bahram Nour-Omid is an individual residing in Los Angeles County, California.  Dr. Nour-Omid is the managing member of Plaintiff Learnicon LLC ("Learnicon").

2.      Plaintiff Learnicon is a Delaware limited liability company with its principal place of business in Los Angeles, California.

3.      Defendant CarbonLite Holdings LLC ("CarbonLite") is a Delaware limited liability company with its principal place of business in Los Angeles, California.  According to its website, CarbonLite is "the world's largest producer of food-grade Post-Consumer Recycled PET [polyethylene terephthalate]," a recyclable plastic.  Defendant Leon Farahnik is the Founder, Chief Executive Officer, and Chairman of the Board of Directors of CarbonLite. Plaintiff Bahram Nour-Omid was a director of CarbonLite at all relevant times herein until February 12, 2021.

4.      Defendant LF Investment Holdings, LLC ("LFIH") is a Delaware limited liability company with its principal place of business in Los Angeles, California.  LFIH is a holding company that was created for the sole purpose of carrying out the deceptive and unlawful transactions at issue.

5.      Defendant Leon Farahnik is an individual residing in Los Angeles County, California.  As mentioned, Mr. Farahnik is the Founder, Chief Executive Officer, and Chairman of the Board of Directors of CarbonLite.   Mr. Farahnik is also the sole member of HPC Industries, LLC ("HPC Industries"), which in turn is the sole member of LFIH and the

managing member and largest shareholder of CarbonLite. Mr. Farahnik is effectively the owner, principal, and sole decision-maker of both HPC Industries and LFIH.

6.     Defendant Kim Jeffery is an individual residing in Los Angeles County, California. Mr. Jeffery is a director of CarbonLite and serves on CarbonLite's Finance Committee.

7.     Defendant Faramarz Yousefzadeh is an individual residing in Los Angeles County, California. Mr. Yousefzadeh is a director of CarbonLite and serves on CarbonLite's Finance Committee.

8.     Defendant Orion Energy Credit Opportunities Fund II, L.P. is a limited partnership organized under Delaware law. It is a lender to CarbonLite pursuant to a Credit Agreement dated as of August 2, 2019, which was subsequently amended six times (the "Credit Agreement").

9.     Defendant Orion Energy Credit Opportunities Fund II PV, L.P. is a limited partnership organized under Delaware law. It is a lender to CarbonLite pursuant to the Credit Agreement.

10.     Defendant Orion Energy Credit Opportunities Fund II GPFA, L.P. is a limited partnership organized under Delaware law. It is a lender to CarbonLite pursuant to the Credit Agreement.

11.     Defendants Orion Energy Credit Opportunities Fund II, L.P., Orion Energy Credit Opportunities Fund II PV, L.P., and Orion Energy Credit Opportunities Fund II GPFA, L.P. are collectively referred to herein as "Orion."

12.     Defendant Force Ten Partners, LLC ("Force 10") is a Delaware limited liability company with its principal place of business in Newport Beach, California. Force 10 is an

advisory firm that specializes in corporate restructuring. Force 10 entered into an engagement agreement with CarbonLite to provide the services of Defendant Brian Weiss as Chief Restructuring Officer for CarbonLite to manage the company's ongoing restructuring efforts.

13.     Defendant Brian Weiss is an individual residing in Orange County, California. Mr. Weiss is a partner of Force 10 who, at all relevant times herein, served as CarbonLite's Chief Restructuring Officer.

14.     Plaintiffs do not know the true names and capacities of the defendants sued herein as Does 1 through 50, inclusive, and therefore sue said defendants by such fictitious names. Plaintiffs will amend this Complaint to allege the true names and capacities of defendants Does 1 through 50 when the same are ascertained. Plaintiffs are informed and believe and based thereon allege that such fictitiously named defendants are liable to Plaintiffs for the facts and circumstances alleged herein.

15.     Plaintiffs are informed and believe and based thereon allege that each and every one of the defendants was the agent, employee, joint venturer, partner, subsidiary, and/or co-conspirator of each other defendant, and that each defendant aided and abetted each other defendant in committing the acts complained of herein.

16.     Defendants CarbonLite, LFIH, Leon Farahnik, Kim Jeffery, Faramarz Yousefzadeh, Orion, Force 10, Brian Weiss, and Does 1 through 50 are collectively referred to herein as "Defendants."

## JURISDICTION AND VENUE

17.     This Court has personal jurisdiction over Defendants because they, and each of them, reside in, have extensive contacts with, conduct substantial business within, and/or

intentionally avail themselves of the benefits and protections of the laws in, the State of Delaware and this Judicial District.

18.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334.  On or about March 8, 2021, CarbonLite filed a Chapter 11 Voluntary Petition in this Court initiating bankruptcy proceedings (*In re: CarbonLite Holdings LLC, et al.*, Case No. 21-bk-10527-JTD). This action against CarbonLite and the other Defendants arises in and is related to such action.

19.     Venue is proper in this Court because Defendants are Delaware entities, reside and/or do business within this Judicial District, and/or have agents for service of process in this Judicial District.

## FACTUAL ALLEGATIONS

20.     CarbonLite was founded in or around 2010 by defendant Leon Farahnik. CarbonLite is in the business of recycling plastic into food-grade Post-Consumer Recycled polyethylene terephthalate resins.

21.     On or about August 2, 2019, CarbonLite entered into the Credit Agreement with Orion establishing a credit facility for CarbonLite.

22.     The Credit Agreement was subsequently amended six times, by the following: Amendment No. 1 dated March 30, 2020; Amendment No. 2 dated September 9, 2020; Amendment No. 3 dated October 23, 2020; Amendment No. 4 dated December 10, 2020; Forbearance Agreement and Amendment No. 5 dated February 8, 2021; and Amendment No. 6 dated March 1, 2021.

23.     Pursuant to the Credit Agreement and its amendments, Orion extended a series of loans to CarbonLite and its subsidiaries, in several tranches.  The original Tranche A Loans

consisted of \$80,000,000.[2]  The Tranche B Loans, issued under Amendment No. 2, consisted of \$5,250,000.  The Tranche C Loans, issued under the Forbearance Agreement and Amendment No. 5, consisted of \$2,800,000.  The Tranche C Loans were later increased under Amendment No. 6 by \$2,684,035.34, making the total Tranche C Commitments equal to \$5,484,035.34.

## A.      The Tranche B Transaction

24.      After extending \$80,000,000 in principal amount of Tranche A Loans, Orion requested certain repayment conditions from CarbonLite in connection with issuing the Tranche B Loans.  Generally speaking, those conditions called for a "Minimum Return" and additional returns that increased over time, an issuance of warrants covering 2% of CarbonLite's equity, and a second lien on a CarbonLite facility in Dallas—all of which were triggered if the Tranche B Loans were not repaid within 45 days (i.e., by October 24, 2020).

25.      Prior to the expiration of the 45-day period, in order to avoid the above-referenced triggers, Orion and CarbonLite discussed having another investor "step into" the Tranche B obligation and setting up the transaction as a "participation," or sale of the Tranche B Loans.

26.      To that end, on October 2, 2020, Chris Leary, an Investment Partner at Orion, emailed CarbonLite's CEO defendant Leon Farahnik, copying Orion's "CarbonLite Deal Team," and wrote:

---

[2] A fourth Orion entity, Orion Energy Credit Opportunities CarbonLITE Co-Invest, L.P., also participated in the Tranche A Loans, issuing \$30,000,000 of the \$80,000,000 total.

## Tranche B



**Chris Leary** <Chris@OrionEnergyPartners.com>
To   Leon Farahnik
Cc   CarbonLite Deal Team



Fri 10/2/2020 9:45 AM

Leon – nice to chat yesterday

Wanted to follow back up on this, related to having one of your shareholders step into the $5.25MM Tranche B. I discussed with the team and we would be open to exploring this idea, as long as we use the existing set of loan documents and Orion Energy Partners Agent LLC remained both Administrative Agent / Collateral Agent for the Tranche B participation. We do not want a lengthy legal process / intercreditor, and I think this would be the only way to achieve that (by structuring it as a "participation" or a sale of the existing loan).

Also we had some initial questions that would inform the decision:

1. Who is the potential investor?
2. When are they expected to be able to close by?
3. What would the revised economic terms be on the New Tranche B?

Separately look forward to hearing back on the capital required to remain in CarbonLITE to effect the PinPack sale as agreed yesterday, once you connect with Gregg

Call anytime

27.     The "potential investor" was plaintiff Bahram Nour-Omid.  Defendant Farahnik forwarded Mr. Leary's October 2, 2020 email to plaintiff Nour-Omid on October 5, 2020 and wrote:

## FW: Tranche B



**Leon Farahnik** <leon@carbonliterecycling.com>
To   Nour-Omid, Bahram



Mon 10/5/2020 8:38 AM

| ✉ | Tranche B    ▾ | | 📄 | 4182_001.pdf    ▾ |
|---|----------------| |----|-------------------|
|   | Outlook item   | |    | 92 KB             |

Bahram,

Please review the attached.  I will call you and explain.

28.     On October 7, 2020, Mr. Leary of Orion sent another email to defendant Farahnik of CarbonLite, again copying Orion's "CarbonLite Deal Team."  That email stated:

**From:** Chris Leary <Chris@OrionEnergyPartners.com>
**Date:** October 7, 2020 at 9:47:25 PM EDT
**To:** Leon Farahnik <leon@carbonliterecycling.com>
**Cc:** CarbonLite DealTeam <CarbonLiteDealTeam@orionenergypartners.com>
**Subject: RE: Tranche B**

Hey Leon – I spent some time today with our internal legal team at Orion Energy, and they had some notes about how we would suggest moving forward with getting your board member to step into the Tranche B Loan. See below:

- Structure
    - Orion Energy will sell a $5.25MM participation in the Tranche B Loan to [Board Member] (the **"Participant"**)
    - Orion Energy will be paid all accrued interest on the Tranche B Loan prior
    - Closing to occur within the 45 day period following the Tranche B Loan closing, which occurred on 9/9/2020
    - Participation will be documented via a Participation Agreement (for the whole loan)
    - Existing Credit Agreement and related documents left largely unchanged

- Key terms of Tranche B Loan
    - Economics to be amended to a lower cost of capital (as previously discussed), accomplished by a decrease in the milestone payments amounts (totaling roughly $1MM)
    - Tranche B Loan interest of 14.85%, with up to 4.85% paid in kind – unchanged from current structure
    - Tranche B Loan will be paid first from the proceeds of an equity raise or an <u>approved</u> sale of PinnPack, and will be paid after the Tranche A loan in all other scenarios, as "last out" (including in a liquidation/foreclosure) – priority unchanged from current structure
    - No other collateral for Tranche B Loan (e.g. the additional 2% warrants, the additional public stock, and AR/inventory at Texas Plant no longer apply)
    - We assume personal guaranty will remain in place for the Tranche B Loan

- Enforcement / Approval Rights
    - Orion Energy remains Admin Agent and Collateral Agent for both Tranche A and Tranche B Loans
    - Orion Energy maintains the sole right to enforce the financing agreements and to approve any amendment, modification or waiver of such agreements (including upon any default relating to the Tranche B Loan)
    - Orion Energy shall not amend the Tranche B interest rate or Tranche B principal amount, or the payment priorities described above, without Tranche B Participant approval

Figured this may help with your discussions

29.     The "board member" who was going to "step into the Tranche B Loan" was plaintiff Bahram Nour-Omid.

30.     According to Mr. Leary's October 7, 2020 email, Orion and CarbonLite expressly contemplated, among other things, that:

- Orion would directly sell the "$5.25MM participation in the Tranche B Loan to [Dr. Nour-Omid] (the 'Participant')";

- The participation would be "documented via a Participation Agreement (for the whole loan)";

- The "Credit Agreement and related documents [would be] *left largely unchanged*";

- The Tranche B Loan would be "paid first from the proceeds of an equity raise or an approved sale of Pinnpack"[3]; and

- Orion would "not amend the Tranche B interest rate or Tranche B principal amount, *or the payment priorities described above, without Tranche B Participant approval*."

*Id.* (emphasis added).

31.     Defendant Farahnik forwarded Mr. Leary's October 7, 2020 email to plaintiff Nour-Omid on October 9, 2020:



32.     On October 16, 2020, defendant Farahnik sent an email to Mr. Leary of Orion, copying plaintiff Nour-Omid, CarbonLite's Chief Financial Officer Gregg Milhaupt, and CarbonLite's counsel Moshe Kupietzky, and wrote:

---

[3] Pinnpack is CarbonLite's food packaging business. It includes a number of subsidiaries of CarbonLite and a manufacturing facility in Oxnard, California.

Tranche B



Leon Farahnik <leon@carbonliterecycling.com>
To  Chris Leary (Chris@OrionEnergyPartners.com)
Cc  Nour-Omid, Bahram; Gregg Milhaupt; Moshe J. Kupietzky Esq. (mkupietzky@reedsmith.com)

Reply   Reply All   Forward   ...

Fri 10/16/2020 10:40 AM

Tranche B - Learnicon.doc
31 KB

Chris,

Please review the attached summary of terms. I am forwarding the same to Dr. Nour-Omid for his review.

Please let me know if you have any comments.

33.     The "attached summary of terms" was prepared by CarbonLite's counsel Moshe Kupietzky.  It stated as follows (reproduced in full without alteration):

**Tranche B "Summary of Terms"**

- Lender
  - Learnicon, LLC (replacing Orion Energy)

- Interest Rate
  - 10.00% cash pay
  - Legal cost covered by the company

- Fee
  - One Million Dollars ($1,000,000.00)
- Uses
  - $5.0MM for the PA Bond deal, $250k for transaction costs and loan discount

- Structure
  - Tranche B Loans will be "first out" only as relates to repayment with proceeds from an equity raise, subordinated debt, or second lien debt (subject to an approved intercreditor agreement), sale of Pinnpack

- On liquidation, company sale, other scenarios, proceeds shall be distributed first to Tranche A loans in priority as "first out," then to Tranche B loans as "last out"

- Maturity

  - October 30, 2021 for Tranche B Loans

  - Event of default if Tranche B Loans are not repaid by Maturity

- Prepayment

  - Borrower can repay Tranche B Loans at any time within 45 days from the closing date with <u>NO PENALTY,</u> other than the accrued interest through the prepayment date

- Guarantee

  - Tranche B Loans personally guaranteed by Leon Farahnik of up to $5.25MM + accrued interest

- Other

  - Covenant by CarbonLITE to use commercially reasonable efforts towards a minimum $20.0MM equity raise

  - Orion Energy to support upsizing of the Bank Leumi (or similar) RLOC to a total of $25.0MM from the current $10.0MM facility (subject to approval of an intercreditor agreement)

  - Sale of Pinnpack

34. Of particular relevance here, the proposed terms expressly included that:

- Plaintiff Learnicon would replace Orion as the Lender of the Tranche B Loans;

- There would be a $1,000,000 fee (paid to Learnicon);

- The Tranche B Loans would be "first out" as it relates to repayment with proceeds from (1) an equity raise, (2) subordinated debt, (3) second lien debt, or (4) a *sale of Pinnpack*; on liquidation, company sale, and other scenarios, proceeds would be distributed first to the Tranche A Loans in priority as "first out," then to the Tranche B Loans;

- The Tranche B Loans would be *personally guaranteed* by defendant Farahnik up to $5.25M + accrued interest;

- There would be a covenant that CarbonLite use commercially reasonable efforts towards a minimum $20.0M equity raise; and

- A *sale of Pinnpack*.

35.     Later on October 16, 2020, Mr. Leary of Orion responded to defendant Farahnik and the others on the email chain, including plaintiff Nour-Omid, while also copying Orion's "CarbonLite Deal Team," and wrote:

**From:** Chris Leary <Chris@OrionEnergyPartners.com>
**Sent:** Friday, October 16, 2020 10:48 AM
**To:** Leon Farahnik <leon@carbonliterecycling.com>
**Cc:** Nour-Omid, Bahram <bahram@scopusventures.com>; Gregg Milhaupt <Gregg@carbonliterecycling.com>; Moshe J. Kupietzky Esq. (mkupietzky@reedsmith.com) <mkupietzky@reedsmith.com>; CarbonLite Deal Team <CarbonLiteDealTeam@orionenergypartners.com>
**Subject:** RE: Tranche B

Thanks Leon for passing along, I have shared with the team

Will have a look in detail and revert on questions / next steps on process

One thing I would immediately note, is that any sale of PinnPack would have to be at a valuation & amount of cash to remain in CarbonLITE for liquidity, approved by Orion Energy

I do think it would make sense for our team to connect with Moshe on the most efficient way to sort the documents, if possible today, given the timeline.

36.     Defendant Farahnik responded to Mr. Leary and the others on the email chain, including plaintiff Nour-Omid, and wrote:



agree

37.     Meanwhile, also on October 16, 2020, CarbonLite's counsel Mr. Kupietzky sent an email to plaintiff Nour-Omid and defendant Farahnik attaching the proposed terms and

explaining, among other things, that Orion wanted the transaction to be "the purchase of a participation in its existing loan, and not as a new loan." Mr. Kupietzky asked whether Learnicon (plaintiff Nour-Omid's entity) had counsel to assist it in the transaction and suggested a conference call.

38. Defendant Farahnik responded to Mr. Kupietzky's email as follows:



39. Thus, all of the above-referenced parties intended that plaintiff Learnicon would purchase the Tranche B Loans from Orion and replace it as the lender, that the Tranche B Loans would have payment priority over the Tranche A Loans in multiple scenarios, that this payment priority would not be amended without plaintiff Nour-Omid's approval, that CarbonLite would move toward executing deals that would trigger repayment of the Tranche B Loans (including a sale of Pinnpack), and that CarbonLite's counsel Mr. Kupietzky would prepare all the relevant documents to effectuate the transaction.

40. Despite the fact that the discussions between Orion, CarbonLite, CarbonLite's counsel Mr. Kupietzky, Mr. Farahnik, and Plaintiffs had always been that Learnicon would purchase the Tranche B Loans directly from Orion and step into Orion's shoes, at the last minute, Orion, CarbonLite, CarbonLite's counsel Mr. Kupietzky, and Mr. Farahnik devised a plan whereby a new entity formed and controlled by Mr. Farahnik, defendant LFIH, would "purchase" the Tranche B Loans from Orion, while Plaintiffs would provide the funds for the transaction. Specifically, the plan was that Learnicon would "loan" the funds to LFIH, to be

secured by a note, and LFIH would then use those funds to "purchase" the participation in the Tranche B Loans from Orion. Instead of Learnicon, LFIH would be the record holder of the participation, while Plaintiffs would finance the transaction. This was presented to Dr. Nour-Omid as a "form over substance" matter that would be "easier" for everyone, but the terms of the transaction would stay the same and Plaintiffs would have security for their loan through the note and a personal guaranty from defendant Farahnik. Based on these terms, Plaintiffs agreed to the form of the transaction.

41.     Consequently, on October 23, 2020 (one day before the expiration of the 45-day grace period for CarbonLite to repay the Tranche B Loans), Orion, CarbonLite, LFIH, and Learnicon executed a series of agreements and documents to effectuate the sale of the Tranche B Loans to LFIH, financed by Plaintiffs. These agreements and documents (the "Closing Documents")[4] included, *inter alia*:

- Amendment No. 3 to the Credit Agreement;

- Participation Agreement for Par/Near Par Trades;

- Note Purchase Agreement;

- Promissory Note;

- Security Agreement;

- UCC-1 Financing Statement;

- LFIH Certificate of Formation;

- LFIH Operating Agreement.

---

[4] A true and correct copy of the October 23, 2020 package of Closing Documents is attached hereto as Exhibit 1.

42.    LFIH is a holding company controlled by defendant Farahnik that was created for the sole purpose of carrying out this transaction and the subsequent transactions that ultimately harmed Plaintiffs as alleged herein.  CarbonLite was the initial member of LFIH.  At some point, HPC Industries became the sole member of LFIH.  The common thread among all of these entities is defendant Leon Farahnik.  At all relevant times, Mr. Farahnik was (and is) the Chief Executive Officer of CarbonLite and the principal and sole decision-maker of both LFIH and HPC Industries.

43.    According to the Closing Documents, to consummate the Tranche B transaction, LFIH "purchased" the Tranche B Loans from Orion pursuant to a Participation Agreement for Par/Near Par Trades (the "Participation Agreement").  In reality, the funds for the purchase came from Learnicon.  Simultaneously with the execution of the Participation Agreement, LFIH issued a promissory note to Learnicon in the amount of $6,250,000[5] (the "Note") and entered into a Note Purchase Agreement (the "Note Purchase Agreement") to sell the Note to Learnicon.  The Note was secured by LFIH's participation interest in the Participation Agreement, pursuant to a Security Agreement between Learnicon, as the Secured Party, and LFIH, as the Debtor (the "Security Agreement"), with the security interest being recorded in Delaware in a Uniform Commercial Code ("UCC") Form-1 filing.  CarbonLite's counsel publicly filed the UCC-1 Financing Statement on October 22, 2020.  Plaintiffs then wired $5,250,000 *directly to Orion* to purchase the Tranche B Loans.

44.    The effect of the Closing Documents was that Orion had sold the Tranche B Loans to LFIH (via the Participation Agreement), and LFIH had sold a note to Learnicon secured by its interest in the Participation Agreement (via the Note Purchase Agreement).

---

[5] This represented the $5,250,000 purchase price for the Tranche B Loans plus the $1,000,000 fee.

However, Learnicon was the true purchaser and beneficial holder of the Tranche B participation, as it and Dr. Nour-Omid provided the funds directly to Orion for the purchase.

45.     Indeed, on October 22, 2020, in an email chain between members of Orion (including Senior Vice President and Senior Counsel Zhao Yang), CarbonLite's counsel Mr. Kupietzky, defendant Farahnik, and plaintiff Nour-Omid, plaintiff Nour-Omid advised that "the cash [to Orion] will come from [Dr. Nour-Omid's] personal account, but advanced on behalf of his wholly owned entity Learnicon, LLC."

46.     Without Plaintiffs' willingness to finance the Tranche B participation, CarbonLite would have faced severe repayment penalties to Orion for the Tranche B Loans. Plaintiffs' agreement to provide $5,250,000 in cash to Orion just prior to the expiration of the 45-day grace period provided a significant monetary benefit and operational flexibility to CarbonLite.

47.     There is no question that defendants Orion, CarbonLite, LFIH, and Farahnik knew that Plaintiffs had financed the Tranche B participation and were the true owners of the interest.  These parties participated in direct communications via email and telephone regarding how to set up the transaction, facilitated the transaction, and executed the transaction. CarbonLite's counsel prepared the relevant documents and created the legal framework for the transaction.  Dr. Nour-Omid was told that everything would be "taken care of" and that Plaintiffs' interest in the Tranche B Loans would be secure and protected.

48.     There is also no question that each of the other Defendants (including CarbonLite directors Kim Jeffery and Faramarz Yousefzadeh, CarbonLite's Chief Restructuring Officer Brian Weiss, and Mr. Weiss's firm Force 10) knew that Plaintiffs had financed the Tranche B participation and were the true owners of the interest.

49.     Prior to the close of the Tranche B transaction, CarbonLite's board members engaged in discussions such as the following:

**From:** Leon Farahnik <lfarahnik@hpcindustries.com>
**Sent:** Saturday, October 17, 2020 12:15 PM
**To:** Ben Shapiro <bshapiro@masonave.com>
**Cc:** Leon Farahnik <leon@carbonliterecycling.com>; Gyani, Mohan <mohan.gyani@gmail.com>; Jeffery, Kim <kim@jefferyadvisors.com>; Ira Maroofian <ira@carbonliterecycling.com>; Neman, Kamran <kamran@midthrust.com>; Nour-Omid, Bahram <bahram@scopusventures.com>; Matthew Shapiro <m@masonave.com>; Yousefzadeh, Faramarz <faramarz@windmillcap.com>
**Subject:** Re: Tranche B Debt

Thank you Ben of course the details of the deal will be reviewed by the board and i am confident that the board will Unanimously approve the deal and appreciate the help that dr nour-Omid is providing to the company have a nice weekend.

Sent from my iPhone

> On Oct 17, 2020, at 6:55 AM, Ben Shapiro <bshapiro@masonave.com> wrote:
>
> Leon:
>
> In our conversations yesterday, you discussed the intention of you and Bahram to provide financing to CarbonLite to purchase or repay the Tranche B Debt recently issued to Orion.
>
> I look forward to the details of any proposal you and Bahram desire to place in front of the Board for such a transaction.
>
> Please note that such a financing clearly would be a "transaction with an Affiliate" requiring a Supermajority Approval as defined in our Operating Agreement.
>
> Given the current precarious sate of CarbonLite's operating performance to its debt loads, I would expect any financing provided by Affiliates such as you and Bahram would be structured to avoid placing either of you in undue conflict with other stakeholders in the business as it relates to creating payment defaults or structural subordination issues.

50.     On October 19, 2020, Mr. Farahnik emailed CarbonLite's board members to set up a board meeting on October 22, 2020 to discuss the Tranche B transaction.

51.     On October 21, 2020, in advance of the October 22 board meeting, CarbonLite's counsel Mr. Kupietzky sent an email to the board disclosing the terms of the transaction, including Plaintiffs' participation therein.   He explained that "100% of the financing for LF Investment Holdings' purchase of the Participation is being provided by a company wholly owned by Dr. Bahram Nour-Omid [i.e., Learnicon], a Company Board member" and clarified that "LF Investment Holdings will not retain any of the economic benefits from its ownership of the Participation, which is being pledged to Dr. Nour-Omid's company [Learnicon]."   He also

informed the board that they would not be asked to approve the terms of the agreements between LFIH/Mr. Farahnik and Learnicon/Dr. Nour-Omid but that they would be asked to approve the overall transaction and a formal amendment to the Credit Agreement to memorialize the terms (which would be Amendment No. 3).

52.     Pursuant to CarbonLite's Fourth Amended and Restated Operating Agreement, dated as of December 20, 2018 ("Operating Agreement"),[6] any direct or indirect transaction between CarbonLite and an interested director, member, officer, or related party had to be disclosed to the board of directors and, among other things, approved by a Supermajority Vote. A Supermajority Vote is defined by the Operating Agreement as "(i) with respect to the Members of the Company, the affirmative vote or consent of the holders of $66^{2/3}$% of the Voting Interests of the Voting Members and (ii) with respect to the Board of Directors, the affirmative vote or consent of at least one Series B Director and a Majority of the remaining Directors." (Ex. 3 at Ex. A (Definitions), p. 15.)   A Series B Director is defined as one of "two (2) representatives designated by a Majority Vote of the Voting Interests comprised of Series B Membership Units (the 'Series B Directors') …."  (Ex. 3 at § 3.1(c)(i)(1).)

53.     The Tranche B transaction reflected in the Closing Documents was a transaction that required a Supermajority Vote by CarbonLite's board of directors.   This opinion was espoused by CarbonLite director Ben Shapiro's email to defendant Farahnik on October 17, 2020 and Mr. Kupietsky's email to the board on October 21, 2020.

---

[6] A true and correct copy of the Operating Agreement is attached hereto as Exhibit 3.  This is CarbonLite's current Operating Agreement.

54. The board held a meeting on October 22, 2020, at which meeting they approved the Tranche B transaction and Amendment No. 3 to the Credit Agreement by a Supermajority Vote.

55. In agreeing to pay $5,250,000 for the Tranche B Loans and participate in the transaction, Plaintiffs relied on certain materials terms including the following:

- The "Credit Agreement and related documents [would be] *left largely unchanged*";

- Orion would "not amend the Tranche B interest rate or Tranche B principal amount, *or the payment priorities … without Tranche B Participant approval*";

- With respect to payment priority over the Tranche A Loans, the Tranche B Loans would be "first out" as it relates to repayment with proceeds from an equity raise, subordinated debt, second lien debt, or a *sale of Pinnpack*;

- The Tranche B Loans would be *personally guaranteed* by defendant Farahnik up to $5.25M + accrued interest; and

- CarbonLite would use commercially reasonable efforts towards a minimum $20.0M *equity raise*.

56. Plaintiffs would not have agreed to finance the Tranche B Loans if they had known that any of the above material terms would be disregarded.

57. Amendment No. 3 to the Credit Agreement, which was part of the Closing Documents and executed in conjunction with the Tranche B transaction, memorialized the payment priority for the Tranche B Loans over the Tranche A Loans. As to the sale of Pinnpack specifically, Amendment No. 3 confirmed Tranche B's priority over Tranche A in the event of a "Qualified PinnPack Sale," which it defined as "a direct or indirect sale of the Pinnpack Facility in accordance with and upon terms approved in writing by the Administrative Agent (in its sole and absolute discretion), including, without limitation, as to process, valuation, amount and

form of consideration and application of proceeds; provided that, without limiting the generality of the foregoing, the Administrative Agent shall not be required to consider or approve any proposed sale of the Pinnpack Facility that yields proceeds (net of any fees, expenses and amounts proposed to be retained by the Loan Parties) of less than $25,000,000.00."  (Ex. 1 (Amend. No. 3) at § 2(a).)  Amendment No. 3 further provided that "[a]ny partial prepayments of the Loans [meaning Tranche A *and* Tranche B] pursuant to Section 2.05(b)(iii) (solely to the extent relating to a Qualified PinnPack Sale), Section 2.05(b)(vi) or Section 2.05(b)(vii)[7] shall be applied (1) first, on a *pro rata* basis to the Tranche B Obligations of each Tranche B Lender and (2) *second*, on a *pro rata* basis to the Tranche A Obligations of each Lender or as otherwise directed by the Administrative Agent."  (*Id.* at § 2(e) (all emphases in original).)

## B.     The Forbearance Agreement

58.     Several months later, on February 2, 2021, there was a special meeting of the board of directors of CarbonLite.  The purpose of the meeting was to discuss CarbonLite's financial status and situation with its principal lenders, including Orion.  At the meeting, defendant Farahnik informed the board that Orion had declared a default under the Credit Agreement.  He informed the board that CarbonLite's Finance Committee (composed solely of defendants Kim Jeffery and Faramarz Yousefzadeh) and defendant Brian Weiss, CarbonLite's Chief Restructuring Officer pursuant to the engagement with defendant Force 10, had been negotiating with Orion to obtain a forbearance agreement as well as additional funding of working capital.  Mr. Weiss then updated the board on the status of the negotiations with Orion,

---

[7] Section 2.05(b) of the Credit Agreement contains the terms of "Mandatory Prepayments and Offers to Prepay" the Loans.  Section 2.05(b)(iii) discusses the Borrower's prepayment obligation in the event of a disposition of assets; section 2.05(b)(vi) discusses the Borrower's prepayment obligation in the event of an additional equity raise; and section 2.05(b)(viii) discusses the Borrower's prepayment obligation in the event of a failure to close a certain bond deal involving CarbonLite's Pennsylvania facility.

including the fact that Orion had agreed to a few requested changes from CarbonLite, such as eliminating the proposed requirement for collateral being provided by, and proposed restrictions on intercompany activities involving, CarbonLite's Texas and Pennsylvania subsidiaries, and negotiating a smaller prepayment penalty with respect to a proposed Tranche C advance. At no time did defendants Farahnik, Jeffery, Yousefzadeh, or Weiss inform the board (including plaintiff Nour-Omid) that the proposed forbearance agreement with Orion would eliminate the previously agreed upon payment priorities for the Tranche B Loans and subordinate the Tranche B Loans to both the Tranche A Loans *and* new Tranche C Loans.

59.     At the February 2, 2021 board meeting, the CarbonLite board voted to delegate to the Finance Committee (i.e., defendants Jeffery and Yousefzadeh) the authority to negotiate and finalize the forbearance agreement with Orion and to authorize defendant Farahnik to execute and deliver the forbearance agreement on CarbonLite's behalf. Plaintiff Nour-Omid reasonably trusted that defendants Jeffery, Yousefzadeh, and Farahnik would negotiate and execute a fair agreement that protected his and Learnicon's interest in the Tranche B Loans, which all of the parties knew had been financed by Plaintiffs. Had defendants Jeffery, Yousefzadeh, or Farahnik disclosed the specific terms of the proposed forbearance agreement relating to the subordination of the Tranche B Loans, plaintiff Nour-Omid would not have voted to authorize any of them to negotiate, finalize, or execute the forbearance agreement containing such terms.

60.     On or about February 8, 2021, CarbonLite and Orion entered into the Forbearance Agreement and Amendment No. 5 to Credit Agreement dated February 8, 2021 (the "Forbearance Agreement").[8]

61.     Pursuant to the Forbearance Agreement, Orion agreed to issue a new tranche of loans (Tranche C) to CarbonLite in the amount of $2,800,000. Unbeknownst to Plaintiffs, the Forbearance Agreement subordinated the Tranche B Loans to both the Tranche A *and* Tranche C Loans and eliminated certain key rights associated with the Tranche B Loans. Most glaringly, the Forbearance Agreement struck the notion of a "Qualified PinnPack Sale" and various prepayments triggering repayment of the Tranche B Loans ahead of the Tranche A Loans. (*See* Ex. 2 at Ex. A (the redlined Credit Agreement), pp. 28, 43-45 (e.g., striking the term "Qualified PinnPack Sale"; striking Tranche "B" in favor of "A/C").) The Forbearance Agreement flipped the previously agreed upon payment priority for Tranche B over Tranche A on its head. In other words, the terms on which Plaintiffs had agreed to finance the Tranche B Loans were unilaterally eviscerated.

62.     Mr. Farahnik signed the Forbearance Agreement on behalf of CarbonLite and its subsidiaries. The Forbearance Agreement also required that LFIH (who, at least on paper, still owned the participation interest in the Tranche B Loans) approve the agreement. To that end, Mr. Farahnik signed a Consent on behalf of LFIH, which stated: "In connection with the entry by CarbonLite Holdings, LLC, its subsidiaries and Orion … into the Forbearance Agreement and Amendment No. 5 to the Credit Agreement (the 'Agreements'), I hereby certify on behalf of LF Investment Holdings LLC, that I have reviewed and approve of the Agreements." Mr.

---

[8] A true and correct copy of the Forbearance Agreement is attached hereto as Exhibit 2.

Farahnik signed the Consent as LFIH's "Manager." LFIH did not receive any consideration for this Consent, which was illusory.

63.     In addition, defendants Jeffery and Yousefzadeh (CarbonLite's Finance Committee) signed a "Unanimous Written Consent" to the Forbearance Agreement.

64.     However, the Forbearance Agreement was a transaction that required a Supermajority Vote by CarbonLite's board of directors. It involved a transaction by a director, member, officer, or related party with CarbonLite and it was an HPC Party Transaction, as that term is defined in the Operating Agreement (and described further below). The parties did not obtain approval of the Forbearance Agreement by a Supermajority Vote in breach of CarbonLite's Operating Agreement.

65.     Furthermore, even though Orion had previously represented that it would not amend the Tranche B payment priorities absent Dr. Nour-Omid's approval, Dr. Nour-Omid did not approve of the Forbearance Agreement. In fact, his approval was never sought. Dr. Nour-Omid was left entirely out of the negotiation and execution of the Forbearance Agreement—and he was the only board member who stood to lose from the agreement, as he and Learnicon had paid $5,250,000 to Orion to rescue CarbonLite from the triggering of the severe penalties under Amendment No. 2, and expected that the Tranche B Loans would be repaid ahead of the Tranche A Loans in the event of a sale of Pinnpack.

66.     Dr. Nour-Omid never saw the Forbearance Agreement before it was executed. He was not informed of its contents. He was not informed that the Forbearance Agreement subordinated the Tranche B Loans to both the Tranche A *and* Tranche C Loans and eliminated material rights associated with the Tranche B Loans, including its payment priorities. Had Dr. Nour-Omid been informed that Plaintiffs' interest in the Tranche B Loans was going to be

harmed in this way, he would have objected to the Forbearance Agreement and done everything in his power to protect Plaintiffs' interest.

67.     On February 10, 2021, there was another special meeting of the board of directors of CarbonLite.   At this meeting, Mr. Yousefzadeh reported to the board that the Forbearance Agreement with Orion had been executed and that Orion had already advanced $2,500,000 to CarbonLite.   According to the board meeting minutes, Mr. Yousefzadeh "summarized the key elements of the Forbearance Agreement, which included a number of stringent limitations on the Company's [CarbonLite's] financial operations, and further required the Company to begin marketing the Company for sale, as well as to prepare for a potential Chapter 11 filing in March …."   At no time did defendants Farahnik, Yousefzadeh, Jeffery, or Weiss inform the board (including plaintiff Nour-Omid) that the executed Forbearance Agreement subordinated the Tranche B Loans to both the Tranche A and the newly issued Tranche C Loans, and eliminated material rights associated with the Tranche B Loans (including its payment priority in the event of a sale of Pinnpack).

68.     On or about February 16, 2021 (i.e., about a week after the Forbearance Agreement had been executed), LFIH sold its record interest in the Participation Agreement with Orion to Learnicon via a Participation Purchase Agreement.   Thus, whereas previously Learnicon had its Note secured by the Participation Agreement interest, Learnicon now owned the participation interest directly.   At no time in connection with entering into the Participation Purchase Agreement did LFIH or its principal Mr. Farahnik inform Learnicon or Dr. Nour-Omid that the Forbearance Agreement between CarbonLite and Orion had subordinated the Tranche B Loans to both the Tranche A and the newly issued Tranche C Loans, and eliminated material rights associated with the Tranche B Loans.

69.     At the time of the Participation Purchase Agreement, Plaintiffs knew that CarbonLite and Orion had entered into the Forbearance Agreement, but, critically, they were not aware of the Forbearance Agreement's terms. Neither Dr. Nour-Omid nor Learnicon had received a copy of the Forbearance Agreement or been made aware of its contents at that point.

70.     Plaintiffs finally received a copy of the Forbearance Agreement on or around February 25, 2021. Only then did they realize what had truly happened. CarbonLite and the director defendants (Farahnik, Jeffery, and Yousefzadeh) had used Plaintiffs' $5,250,000 payment to avoid harsh repayment penalties to Orion associated with the Tranche B Loans. Orion knew about and participated in the transaction that facilitated the $5,250,000 payment by Learnicon to Orion for the "purchase" of the Tranche B Loans by LFIH. Indeed, Plaintiffs engaged in multiple communications (including phone calls and emails) with representatives of Orion, CarbonLite, CarbonLite's counsel, and defendant Farahnik wherein they discussed that Plaintiffs would be financing the Tranche B Loans. Plaintiffs wired the funds directly to Orion, who accepted them. Orion and the other defendants then negotiated and entered into the Forbearance Agreement to provide CarbonLite with additional capital and subordinated the Tranche B Loans to both the Tranche A and the newly issued Tranche C Loans, and reversed the payment priorities for Tranche B (including in the event of a sale of Pinnpack). This was done without Plaintiffs' knowledge, consent, or approval, and in complete disregard of Plaintiffs' rights and interests in the Tranche B Loans. Then, after the Forbearance Agreement was executed, LFIH (through Mr. Farahnik) sold the participation interest in the Tranche B Loans to Learnicon without disclosing that the interest had been substantially devalued to the point of being practically worthless.

71.     After discovering what happened, Dr. Nour-Omid confronted Mr. Farahnik and CarbonLite's counsel Mr. Kupietzky.  Not surprisingly, both claimed ignorance.  Mr. Farahnik claimed that he signed the signature pages of the Forbearance Agreement without reviewing the final version, and Mr. Kupietzky claimed that he did not foresee any of this happening when he prepared the documents to consummate the Tranche B transaction.

72.     To make matters worse, on March 1, 2021, Orion and CarbonLite entered into Amendment No. 6 to Credit Agreement, which increased the Tranche C Loans by $2,684,035.34, making the total Tranche C Commitments equal to $5,484,035.34.  This was done after Learnicon had become the record holder of the interest in the Tranche B Loans and at such a time when Defendants knew that they had already substantially harmed Learnicon's interest.  Amendment No. 6 further harmed Learnicon's interest by further subordinating the Tranche B Loans to over $2.6 million of additional Tranche C Commitments on top of the original $2.8 million Tranche C Loans.

73.     Plaintiffs were not aware of the negotiation and execution of Amendment No. 6. They were not informed of the contents of Amendment No. 6.  They were not informed of the effect of Amendment No. 6 on the Tranche B Loans.  They did not know about, consent to, or approve in any way Amendment No. 6.

74.     Between the negotiation of the Tranche B transaction in October 2020 and the execution of the Forbearance Agreement on or about February 8, 2021, CarbonLite never made commercially reasonable efforts towards a minimum $20,000,000 equity raise.  A week after executing Amendment No. 6, on March 8, 2021, CarbonLite filed for Chapter 11 bankruptcy protection in this Court.  In light of the improperly entered into Forbearance Agreement, the Tranche B Loans are now evidently so far out of the money that it is impossible they will be

repaid through the sale of any assets (including Pinnpack). If the Forbearance Agreement had not been entered into, and the payment priorities and other rights associated with the Tranche B Loans in Amendment No. 3 were still in place, this would not be the case.

75.     Through this action, Plaintiffs seek damages, rescission of the Forbearance Agreement, declaratory relief, and other appropriate relief for the wrongdoing that was committed against them by the Defendants as alleged herein.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Fraud
### (By Plaintiffs Against Defendants LFIH, Farahnik, Jeffery, Yousefzadeh, Weiss, and Does 1-5)

76.     Plaintiffs incorporate by reference and reallege each and every allegation contained in the paragraphs above and below as if fully set forth herein.

77.     This cause of action is governed by California law because the conduct occurred in California.

78.     Each of the defendants named herein owed a duty to Plaintiffs to disclose certain material facts. Defendants Farahnik, Jeffery, Yousefzadeh, and Weiss owed a fiduciary duty to plaintiff Nour-Omid by virtue of their position and relationship with CarbonLite and each other (i.e., Farahnik, Jeffery, Yousefzadeh, and Nour-Omid were all directors of CarbonLite during the relevant period, Farahnik was also the Chief Executive Officer of CarbonLite, and Weiss was the Chief Restructuring Officer of CarbonLite). Farahnik and LFIH, on the one hand, and Nour-Omid and Learnicon, on the other hand, were also business partners by virtue of the Note, Note Purchase Agreement, and Participation Purchase Agreement.

79.     Each of the defendants named herein made representations to Plaintiffs but did not disclose facts that materially qualified those representations and that rendered those

representations misleading.  Specifically, at CarbonLite board meetings and through email and oral communications, the defendants named herein disclosed limited facts regarding the Forbearance Agreement between Orion and CarbonLite and did not disclose that the Forbearance Agreement subordinated the Tranche B Loans and eliminated material rights associated therewith.  This fact was known to each of the defendants named herein, and each of them knew that this fact was not known to or reasonably discoverable by Plaintiffs.

80.     The defendants named herein concealed or suppressed from Plaintiffs the material fact that the Forbearance Agreement subordinated the Tranche B Loans and eliminated material rights associated therewith, substantially harming Plaintiffs' rights and interests therein.

81.     The defendants named herein intentionally concealed or suppressed this material fact with the intent to defraud Plaintiffs.

82.     Plaintiffs were not aware of the concealed material fact.  Had the material fact been disclosed, Plaintiffs would have objected to the Forbearance Agreement and the subordination of the Tranche B Loans and/or insisted on additional security or guarantees to protect their rights and interests therein.

83.     As a direct and proximate result of these defendants' concealment or suppression, Plaintiffs have sustained damages in an amount to be proven at trial.

84.     These defendants' conduct as described herein was intentional, willful, malicious, outrageous, and oppressive, and therefore also justifies an award of punitive damages.

85.     Furthermore, because the Forbearance Agreement was entered into through fraud and included the fraudulent concealment of material facts from Plaintiffs, to the extent the Forbearance Agreement is alleged to be valid and apply to Plaintiffs, Plaintiffs hereby assert and request that the Forbearance Agreement be rescinded or otherwise voided.

## SECOND CAUSE OF ACTION
### Negligent Misrepresentation
**(By Plaintiffs Against Defendants LFIH, Farahnik, Jeffery, Yousefzadeh, Weiss, and Does 1-5)**

86. Plaintiffs incorporate by reference and reallege each and every allegation contained in the paragraphs above and below as if fully set forth herein.

87. This cause of action is governed by California law because the conduct occurred in California.

88. Each of the defendants named herein made representations to Plaintiffs regarding the elements and conditions of the Forbearance Agreement. These representations were made at CarbonLite board meetings and through email and oral communications between approximately October 2020 and February 2021. At no time did any of these defendants represent to Plaintiffs that the Forbearance Agreement subordinated the Tranche B Loans and eliminated material rights associated therewith.

89. Even if the defendants named herein did not intentionally misrepresent to Plaintiffs the elements and conditions of the Forbearance Agreement, they acted recklessly, negligently, and/or unreasonably in misrepresenting the elements and conditions of the Forbearance Agreement while failing to disclose that the Forbearance Agreement subordinated the Tranche B Loans and eliminated material rights associated therewith.

90. The defendants named herein intended that Plaintiffs rely on their representations regarding the Forbearance Agreement.

91. Plaintiffs reasonably relied on those representations to their detriment. Plaintiffs were not involved in negotiating or executing the Forbearance Agreement. Plaintiffs reasonably trusted the defendants named herein to negotiate and execute the Forbearance Agreement in good faith and without harming Plaintiffs' rights and interests in the Tranche B Loans. After all,

it was only Plaintiffs' willingness to enter into the series of agreements described in this Complaint that enabled CarbonLite to avoid the harsh repayment penalties to Orion that would have been triggered if the Tranche B Loans had not been repaid to Orion within 45 days. Plaintiffs effectively refinanced the Tranche B Loans on much more favorable terms for the company, providing it a significant monetary benefit and operational flexibility.

92.     As a direct and proximate result of these defendants' negligent misrepresentations, Plaintiffs have sustained damages in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
**Breach of Fiduciary Duty**
**(By Plaintiff Nour-Omid Against Defendants Farahnik, Jeffery, Yousefzadeh, Weiss, and Does 1-5)**

93.     Plaintiffs incorporate by reference and reallege each and every allegation contained in the paragraphs above and below as if fully set forth herein.

94.     This cause of action is governed by Delaware law because the fiduciary duties described herein derive from CarbonLite, which is a Delaware limited liability company.

95.     Each of the defendants named herein owed a fiduciary duty to plaintiff Nour-Omid by virtue of their position and relationship with CarbonLite and each other.

96.     Each of the defendants named herein breached their fiduciary duty to plaintiff Nour-Omid by taking advantage of his commitment to finance the Tranche B Loans to CarbonLite, by negotiating and executing the Forbearance Agreement without regard for and to the severe detriment of his rights and interests, by subordinating the Tranche B Loans without his knowledge or consent, and by later negotiating and executing Amendment No. 6 to the Credit Agreement which even further subordinated the Tranche B Loans, all while knowing that CarbonLite would be imminently filing for Chapter 11 bankruptcy and that it would be extremely unlikely that the Tranche B Loans would ever be repaid.

97.     Each of the defendants named herein further breached their fiduciary duty to plaintiff Nour-Omid by failing to obtain the necessary approval for the Forbearance Agreement pursuant to CarbonLite's Operating Agreement (as alleged further below).

98.     These defendants' breach of fiduciary duty was a substantial factor in causing harm to plaintiff Nour-Omid.

99.     As a direct and proximate result of these defendants' conduct, plaintiff Nour-Omid has sustained damages in an amount to be proven at trial.

100.     These defendants' conduct as described herein was intentional, willful, malicious, outrageous, and oppressive, and therefore also justifies an award of punitive damages.

101.     Furthermore, because the Forbearance Agreement was entered into through the breach of fiduciary duty to Dr. Nour-Omid, to the extent the Forbearance Agreement is alleged to be valid and apply to Dr. Nour-Omid, Dr. Nour-Omid hereby asserts and requests that the Forbearance Agreement be rescinded or otherwise voided.

**FOURTH CAUSE OF ACTION**
**Aiding and Abetting Breach of Fiduciary Duty**
**(By Plaintiff Nour-Omid Against Defendants CarbonLite, Orion, Force 10, and Does 6-50)**

102.     Plaintiffs incorporate by reference and reallege each and every allegation contained in the paragraphs above and below as if fully set forth herein.

103.     This cause of action is governed by Delaware law because the fiduciary duties alleged herein derive from CarbonLite, which is a Delaware limited liability company.

104.     As alleged above, defendants Farahnik, Jeffery, Yousefzadeh, and Weiss were in a fiduciary relationship with plaintiff Nour-Omid and owed a fiduciary duty to plaintiff Nour-Omid.  These defendants breached their fiduciary duty to plaintiff Nour-Omid in all the ways alleged above.

105. The defendants named in this cause of action had full knowledge and awareness that the above-referenced defendants had a fiduciary relationship with plaintiff Nour-Omid and that they breached their fiduciary duty to plaintiff Nour-Omid.

106. The defendants named in this cause of action knowingly and actively participated in the actions of the above-referenced defendants that constituted a breach of fiduciary duty. CarbonLite was at the center of all the relevant transactions that ultimately resulted in the Tranche B Loans being subordinated and plaintiff Nour-Omid's rights and interests therein being substantially impaired. Orion was aware that plaintiff Nour-Omid had financed the purchase of the Tranche B Loans and, in negotiating and executing the Forbearance Agreement (and later Amendment No. 6), knowingly harmed his interests therein. Force 10 was intimately involved in CarbonLite's restructuring efforts, including its negotiation and execution of the Forbearance Agreement and its preparations for filing for bankruptcy, and similarly knowingly harmed plaintiff Nour-Omid's rights and interests in the Tranche B Loans.

107. As a direct and proximate result of these defendants aiding and abetting the breaches of fiduciary duty against plaintiff Nour-Omid alleged in this Complaint, plaintiff Nour-Omid has sustained damages in an amount to be proven at trial.

108. These defendants' conduct as described herein was intentional, willful, malicious, outrageous, and oppressive, and therefore also justifies an award of punitive damages.

109. Furthermore, because the Forbearance Agreement was entered into through the breach of fiduciary duty to Dr. Nour-Omid, to the extent the Forbearance Agreement is alleged to be valid and apply to Dr. Nour-Omid, Dr. Nour-Omid hereby asserts and requests that the Forbearance Agreement be rescinded or otherwise voided.

## FIFTH CAUSE OF ACTION
### Breach of Contract – Operating Agreement
### (By Plaintiff Nour-Omid Against Defendants Farahnik, Jeffery, Yousefzadeh, and Does 1-5)

110.     Plaintiffs incorporate by reference and reallege each and every allegation contained in the paragraphs above and below as if fully set forth herein.

111.     This cause of action is governed by Delaware law pursuant to the Operating Agreement.

112.     At all relevant times herein until February 12, 2021, plaintiff Nour-Omid was a member and director of CarbonLite.  At all relevant times herein, defendants Farahnik, Jeffery, and Yousefzadeh were members and directors of CarbonLite.

113.     The Operating Agreement is a valid contract made and entered into as of December 20, 2018 by the members of CarbonLite, including plaintiff-Nour Omid and defendants Farahnik, Jeffery, and Yousefzadeh.

114.     Section 3.3(a) of the Operating Agreement states, in relevant part, that "[n]otwithstanding anything to the contrary in this Agreement, none of the following actions may be taken by the Board of Directors without the approval of a Supermajority Vote of the Board of Directors: … (vi) Enter into any transaction with an Affiliate, or a party known to the Board to be a Related Party to any Member, Director or officer, other than transactions conducted on an arms length basis and in the ordinary course of business."

115.     Section 3.6(i) of the Operating Agreement states that "[a] Director, Member, officer, or any Affiliate or any Person known to the Board to be a Related Party of any Director, Member or officer, may directly or indirectly engage in any transaction (including without limitation the purchase, sale, lease, or exchange of any property, or the lending of funds, or the rendering of any service, or the establishment of any salary, other compensation, or other terms

of employment) with the Company; provided, however that in each case: (i) such transaction is not expressly prohibited by this Agreement, (ii) the Director, officer, Member, Affiliate or such Related Party, as the case may be, shall have disclosed to the Board of Directors such party's affiliation with the transaction, or relationship with the Director, officer or Member, and the material facts thereof, (iii) to the extent applicable, is approved pursuant to **Section 3.3(a)(vi)** and (iv) either (X) the terms and conditions of such transaction on an overall basis are arms length and fair and reasonable to the Company or (Y) the transaction has been approved by a majority of the Disinterested Directors.  If any such transaction is an HPC Party Transaction it must also be approved by a Super Majority Vote of the Board of Directors."  (Bold emphasis in original.)

116.    The Forbearance Agreement was a transaction that required approval by a Supermajority Vote of CarbonLite's board.  It involved a transaction with an Affiliate or a party known to the Board to be a Related Party (i.e., defendant Farahnik and his entity defendant LFIH) that was not conducted on an arms' length basis or in the ordinary course of business.

117.    Additionally or alternatively, the Forbearance Agreement was an HPC Party Transaction.  An HPC Party Transaction is defined as "any transaction between the Company and an HPC Party."  (Ex. 3 at Ex A, p. 7.)  An "HPC Party" is defined as "any or all of the following: (i) the HPC Member [i.e., HPC Industries], (ii) Leon Farahnik, (iii) any controlling member of HPC, and (iv) any officer of HPC."  (*Id.*)

118.    The Forbearance Agreement was not approved by a Supermajority Vote of the board of directors of CarbonLite.

119.    Furthermore, the Forbearance Agreement involved a transaction directly or indirectly engaged in by a Director, Member, officer, or any Affiliate or any Person known to the

Board to be a Related Party (i.e., defendant Farahnik and his entity defendant LFIH) and was not properly disclosed to the board of directors, including the material facts thereof.

120.    The material facts of the Tranche B transaction and Amendment No. 3 were properly disclosed to CarbonLite's board of directors and approved by a Supermajority Vote. Conversely, the material facts of the Forbearance Agreement were not properly disclosed to CarbonLite's board of directors (including plaintiff Nour-Omid) or approved by a Supermajority Vote.

121.    Plaintiff Nour-Omid performed all, or substantially all, of the acts required of him under the Operating Agreement, except those things excused by the named defendants' breach.

122.    The defendants named herein breached the Operating Agreement in at least the ways alleged within this cause of action.

123.    As a direct and proximate result of the defendants' failure to disclose the material facts of the Forbearance Agreement (including specifically the subordination of the Tranche B Loans) to CarbonLite's board of directors (including plaintiff Nour-Omid) and to obtain approval of the Forbearance Agreement by a Supermajority Vote, the Forbearance Agreement was never properly authorized. Because the Forbearance Agreement was never properly authorized, it should be declared null and void and treated as if it were never executed.

124.    Alternatively, as a direct and proximate result of the defendants' conduct which constitutes breach of the Operating Agreement, Plaintiff Nour-Omid has sustained damages in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**
**Breach of Contract – Personal Guaranty**
**(By Plaintiffs Against Defendant Leon Farahnik)**

125.    Plaintiffs incorporate by reference and reallege each and every allegation contained in the paragraphs above and below as if fully set forth herein.

126.    This cause of action is governed by New York law pursuant to a choice of law provision applicable to the personal guaranty at issue.

127.    In consideration for Plaintiffs agreeing to finance the Tranche B participation and wire $5,250,000 to Orion for the purchase of the Tranche B Loans, defendant Leon Farahnik gave a personal guaranty to Plaintiffs that he would repay the Tranche B obligations to Plaintiffs. This was a valid contract between Plaintiffs, on the one hand, and defendant Farahnik, on the other hand.

128.    Plaintiffs performed all, or substantially all, of the acts required of them under the parties' contract, except those things excused by defendant Farahnik's breach.

129.    Defendant Farahnik breached his personal guaranty.  Plaintiffs have requested repayment of the Tranche B Loans from defendant Farahnik on the agreed upon terms, but defendant Farahnik has refused and/or failed to repay the Tranche B Loans as he promised to do.

130.    As a direct and proximate result of defendant Farahnik's breach of contract, Plaintiffs have sustained damages in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**
**Breach of Implied-in-Fact Contract**
**(By Plaintiffs Against Defendants CarbonLite, Orion, and Does 6-50)**

131.    Plaintiffs incorporate by reference and reallege each and every allegation contained in the paragraphs above and below as if fully set forth herein.

132.    This cause of action is governed by California law because the conduct that gave rise to the implied-in-fact contract between the parties occurred in California, and the implied-in-fact contract was entered into in California.

133.     In or around October 2020, Plaintiffs, on the one hand, and CarbonLite and Orion, on the other hand, entered into an implied-in-fact contract relating to the Tranche B transaction. Under this implied-in-fact contract, the parties agreed and understood that Plaintiffs would step into the Tranche B Loans and replace Orion as the lender to CarbonLite. The parties further agreed and understood that the Tranche B payment priorities discussed and agreed to in October 2020 would not be amended without Plaintiffs' approval.

134.     Plaintiffs did not enter into a written contract with CarbonLite or Orion relating to the Tranche B Loans. Rather, CarbonLite and Orion entered into the Participation Agreement and Amendment No. 3 to the Credit Agreement with LFIH. Nevertheless, Plaintiffs, on the one hand, and CarbonLite and Orion, on the other hand, always intended that there would be an implied contract between them, and each interpreted the closing of the Tranche B transaction on October 23, 2020 as creating an implied contract between CarbonLite, Orion, and Plaintiffs.

135.     Plaintiffs performed all, or substantially all, of the acts required of them under the parties' implied-in-fact contract, except those things excused by the defendants' breach. Plaintiffs wired $5,250,000 in cash to Orion, who accepted the payment, to purchase the Tranche B Loans and relieved CarbonLite of any further obligations to Orion in connection therewith.

136.     CarbonLite and Orion breached the parties' implied-in-fact contract. On or about February 8, 2021, they entered into the Forbearance Agreement. They shut Plaintiffs out of the negotiation and execution of the Forbearance Agreement. They knowingly and intentionally harmed Plaintiffs by subordinating the Tranche B Loans to both the Tranche A and Tranche C Loans, and eliminated material rights associated with the Tranche B Loans. They did so without Plaintiffs' approval and in direct contravention of Plaintiffs' rights and interests in the Tranche B Loans.

137.    As a direct and proximate result of the defendants' conduct which constitutes breach of implied-in-fact contract, Plaintiffs have sustained damages in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
### Tortious Interference with Contractual Relations
### (By Plaintiffs Against Defendants CarbonLite, Orion, Force 10, Jeffery, Yousefzadeh, Weiss, and Does 1-50)

138.    Plaintiffs incorporate by reference and reallege each and every allegation contained in the paragraphs above and below as if fully set forth herein.

139.    This cause of action is governed by California law because the conduct occurred in California.

140.    Plaintiffs had multiple contracts with defendants LFIH and Farahnik, including the Note Purchase Agreement, the Security Agreement, and the Participation Purchase Agreement.   The purpose of these contracts was to secure and protect Plaintiffs' rights and interests in the Tranche B Loans.   Defendant LFIH was a special purpose entity formed solely for the purpose of acquiring a participation interest in the Tranche B Loans, which Plaintiffs financed and subsequently acquired.

141.    The defendants named in this cause of action had full knowledge and awareness of the contracts between Plaintiffs and defendants LFIH and Farahnik.

142.    The conduct of the defendants named in this cause of action prevented the performance by defendants LFIH and Farahnik of those contracts or, at the very least, made such performance virtually impossible.

143.    The defendants named in this cause of action intended to disrupt the performance of these contracts and knew that such disruption was substantially certain to occur.  To wit, they knowingly negotiated the Forbearance Agreement, which subordinated the Tranche B Loans and

eliminated material rights associated therewith without Plaintiffs' knowledge or consent, making it virtually impossible that the Tranche B Loans would ever be repaid. Then they made matters even worse by negotiating and executing Amendment No. 6 to the Credit Agreement, which even further subordinated the Tranche B Loans, without Plaintiffs' knowledge or consent.

144.    At the very least, the defendants named in this cause of action acted negligently in disrupting the performance of the contracts between Plaintiffs and defendants LFIH and Farahnik because they should have known that their conduct would cause such disruption and/or make such disruption substantially certain to occur.

145.    The performance of the contracts between Plaintiffs and defendants LFIH and Farahnik were actually disrupted by these defendants' conduct. Such conduct was a substantial factor in causing Plaintiffs' harm.

146.    As a direct and proximate result of these defendants' conduct, Plaintiffs have sustained damages in an amount to be proven at trial.

**NINTH CAUSE OF ACTION**
**Tortious Interference with Economic Relations**
**(By Plaintiffs Against Defendants CarbonLite, Orion, Force 10, Jeffery, Yousefzadeh, Weiss, and Does 1-50)**

147.    Plaintiffs incorporate by reference and reallege each and every allegation contained in the paragraphs above and below as if fully set forth herein.

148.    This cause of action is governed by California law because the conduct occurred in California.

149.    Plaintiffs were in an economic relationship with defendants LFIH and Farahnik that should have and would have resulted in an economic benefit to Plaintiffs. Indeed, there was more than a reasonable probability of a business opportunity or economic benefit to Plaintiffs from this relationship. In exchange for their commitment to finance the Tranche B Loans,

Plaintiffs were supposed to receive repayment of the loans + accrued interest + certain milestone fees. The expected economic benefit was greater than $5,250,000.

150. The defendants named in this cause of action had full knowledge and awareness of the economic relationship between Plaintiffs and defendants LFIH and Farahnik.

151. The defendants named in this cause of action engaged in wrongful conduct that disrupted this economic relationship. These defendants acted in bad faith, breached (or aided and abetted the breach of) fiduciary duties, and defrauded Plaintiffs by knowingly subordinating the Tranche B Loans and eliminating material rights associated therewith in disregard of Plaintiffs' rights and interests therein.

152. The defendants named in this cause of action intended to disrupt the economic relationship between Plaintiffs and defendants LFIH and Farahnik. Again, they knowingly negotiated the Forbearance Agreement, which subordinated the Tranche B Loans and eliminated material rights associated therewith without Plaintiffs' knowledge or consent, making it virtually impossible that the Tranche B Loans would ever be repaid. Then they made matters even worse by negotiating and executing Amendment No. 6 to the Credit Agreement, which even further subordinated the Tranche B Loans, without Plaintiffs' knowledge or consent.

153. At the very least, the defendants named in this cause of action acted negligently in disrupting the economic relationship between Plaintiffs and defendants LFIH and Farahnik because they should have known that their conduct would cause such disruption and/or make such disruption substantially certain to occur.

154. The economic relationship between Plaintiffs and defendants LFIH and Farahnik were actually disrupted by these defendants' conduct. Such conduct was a substantial factor in causing Plaintiffs' harm.

155.     As a direct and proximate result of these defendants' conduct, Plaintiffs have sustained damages in an amount to be proven at trial.

## TENTH CAUSE OF ACTION
### Declaratory Relief
**(By Plaintiffs Against Defendants CarbonLite, Orion, Force 10, LFIH, Farahnik, and Does 6-50)**

156.     Plaintiffs incorporate by reference and reallege each and every allegation contained in the paragraphs above and below as if fully set forth herein.

157.     This cause of action is governed by Delaware law.

158.     An actual and immediate controversy has arisen and now exists between Plaintiffs and the defendants named herein regarding Plaintiffs' rights and interests in the Tranche B Loans relative to the Tranche A and Tranche C Loans.

159.     The Forbearance Agreement purported to subordinate the Tranche B Loans and eliminate material rights associated therewith without Plaintiffs' knowledge or consent.  Later, Amendment No. 6 to the Credit Agreement purported to even further subordinate the Tranche B Loans without Plaintiffs' knowledge or consent.

160.     The Forbearance Agreement also purported to hamper Plaintiffs' rights and interests by removing the Tranche B priority in payout for a Qualified Pinnpack Sale in the event of a CarbonLite bankruptcy proceeding.

161.     For all the reasons alleged in this Complaint, Plaintiffs' rights and interests in the Tranche B Loans should have priority over the Tranche A and Tranche C Loans on such terms and conditions as agreed by the parties prior to the execution of the Forbearance Agreement.

162.     A judicial declaration that the Tranche B Loans (and Plaintiffs' rights and interests therein) maintain their priority over the Tranche C Loans and confirming the existence

of the Tranche B priority in payout for a Qualified Pinnpack Sale is necessary and appropriate to protect Plaintiffs' rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief against Defendants:

1.  For compensatory damages in excess of the jurisdictional minimum of this Court and in an amount to be determined at trial, which in no event should be lower than $5,250,000;

2.  For punitive damages on Plaintiffs' first, third, and fourth causes of action;

3.  For rescission or other appropriate relief nullifying or voiding the Forbearance Agreement and the amendment of the Tranche B payment priority;

4.  For declaratory relief;

5.  For the recovery of reasonable attorneys' fees as permitted by law;

6.  For interest at the legal rate per annum;

7.  For the costs of this suit; and

8.  For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all causes of actions so triable.

Dated:  June 9, 2021           BARNES & THORNBURG LLP


                                  */s/  Kevin G. Collins*
                                  Thomas E. Hanson, Jr., Esq. (No. 4102)
                                  Kevin G. Collins (No. 5149)
                                  1000 N. West Street, Suite 1500
                                  Wilmington, DE 19801
                                  P: 302-300-3447
                                  F: 302-300-3456
                                  Email: thanson@btlaw.com

and

Sanford L. Michelman (Cal. Bar No. 179702)
smichelman@mrllp.com
Mona Z. Hanna (Cal. Bar No. 131439)
mhanna@mrllp.com
Howard I. Camhi (Cal. Bar No. 149194)
hcamhi@mrllp.com
Alexander R. Safyan (Cal. Bar No. 277856)
asafyan@mrllp.com
MICHELMAN & ROBINSON, LLP
10880 Wilshire Blvd., 19th Floor
Los Angeles, CA 90024
Telephone: (310) 299-5500
Facsimile: (310) 299-5600

Attorneys for Plaintiffs Bahram Nour-Omid and
Learnicon LLC